Opinion of the court by
This action was commenced in the district court of Oklahoma county, by W. R. Taylor, as county attorney of Oklahoma county, against the members of the board of education of the Territory of Oklahoma, for the purpose of enjoining the members of said board, as such board, from expending any of the public funds of said territory in the construction of a normal school building at the city of Granite, *Page 288 
in Greer county, in said territory. One of the members of the board was a resident of Oklahoma county, and the place of meeting of said board was at Edmond in said county. The members of the board appeared by the attorney general of the territory, and objected to the jurisdiction of the court, to the authority of the county attorney of Oklahoma county to maintain the action, and to the power to sue the members of said board. These objections being overruled, issues were formed by answer and reply, and the cause was submitted to the court upon the following agreed statement of facts:
"1. That on or about the 6th day of May, 1901, Hon. C. M. Barnes, then the governor of the territory of Oklahoma, appointed R. W. Southard, C. B. Ames, Robert A. Lowry, J. A. Stine and C. M. Cade, a committee to locate the Southwestern normal school under article 10, chapter 28, of the Session Laws of 1901; that immediately after the appointment of the members named each member of said committee accepted said appointment and took the oath, and filed the same with their acceptance in the office of the governor of Oklahoma Territory; that the said committee met on the 10th day of August, 1901, and organized by electing a chairman and secretary.
"2. That on the 8th day of August, 1901, Hon. W. M. Jenkins, then governor of Oklahoma Territory, appointed Geo. S. Green, W. C. Tetirick, J. H. Wheeler, Luther Martin and John Embry, a committee to locate the said Southwestern normal school, under article 10, chapter 28, of the Session Laws of 1901; that each of the persons so named as members of said committee accepted said appointment on the 12th day of August, 1901, took the required oath, and filed the same with the governor of Oklahoma Territory, and the committee so named met and organized by electing a chairman and secretary.
"3. That on the 12th day of August, 1901, said W. M. Jenkins addressed letters to the said Southard, Ames, Lowry *Page 289 
Stine and Cade, copies of which are hereto attached as 'Exhibits A, B, C, D, and E' to this agreed statements of facts.
"4. That between the 10th day of August, 1901, and the 20th day of September, 1901, each committee visited the southwestern portion of Oklahoma territory, and each selected the site for the establishment of the said Southwestern normal school, as described and stated in the petition of the plaintiff and the answer of the defendants respectively; that said selections were made between the 10th day of August and the 20th day of September, 1901, and each committee made its respective report in writing to the governor of Oklahoma, the president of the board of education, and the secretary of the territory, as set out in the petition and answer respectively. The committee first named located the site for the Southwestern normal school within one mile of the incorporated town of Weatherford, which is located in the southeastern corner of Custer county, Oklahoma; the last named committee located the site for the Southwestern normal school at the town of Granite, which is located in Greer county, Oklahoma Territory, near the eastern line of the county. Each of the places named is an incorporated town; and the sites respectively selected are within one mile of the incorporated limits thereof, and each site contains not less than forty acres of land. Within 30 days after the selection of the said sites, deeds were executed to the Territory of Oklahoma to the lands embraced in said sites, in fee simple, free and clear of all incumbrances whatsoever, without cost to the Territory of Oklahoma, which deeds were delivered, filed and deposited in the office of the secretary of the territory. Abstracts of title were also furnished, showing the title to said sites respectively to have been in the grantors at the time of said conveyances, and each of the said towns have done and performed all acts required of them by said law.
"5. On the 9th day of October, 1901, the chief justice of Oklahoma Territory made an order assigning Judge Bayard *Page 290 
T. Hainer to the Third judicial district for certain purposes, a certified copy of said order as filed in the office of the clerk of the district court of Oklahoma county on the 14th day of October, 1901, is hereto attached as 'Exhibit F' to this agreed statement of facts. A certified copy of said order as filed in the office of the clerk of the district court of said county, on the 9th day of November, 1901, is hereto attached as 'Exhibit G' to this agreed statement of facts. On the 31st day of October, 1901, when the restraining order was issued by Probate Judge J. P. Allen, probate judge of Oklahoma county, Judge B. F. Burwell, the regular district judge of said county and said Third judicial district, was absent from the county and from the district; Judge Bayard T. Hainer, at said time, was holding court in Pottawatomie county in said district, and was absent from Oklahoma county.
"6. That the commissions issued and delivered to the members of the committee first named to locate the Southwestern normal school were in writing, signed by the governor of Oklahoma, and the secretary, under the seal of the territory, and dated May 6, 1901. A copy of one of said commissions is hereto attached, the others being of like tenor.
"7. That the commissions issued and delivered to the members of the last named committee were in writing, signed by the governor of the territory and the secretary, under the seal of the territory, and dated August 8, 1901; that each of said commissions issued to the last named committee contained a recital as follows: 'George S. Green, of Guthrie, O. T., instead of R. W. Southard, of Perry, O. T., retired.' A copy of one of said commissions is hereto attached and made a part of this agreed statement of facts, the others being of like tenor except the commission of W. C. Tetirick purported to substitute him for Robert A. Lowry, the commission of J. H. Wheeler purported to substitute him for C. B. Ames, the commission of Luther Martin purported to substitute him for J. A. Stine, and the commission of John Embry purported *Page 291 
to substitute him for C. M. Cade, which was expressed in each of said commissions.
"8. Each of the aforesaid commissions designated the persons therein named as a member of the committee authorized to select a site for the Southwestern normal school under article 10, chapter 28, of the Session Laws of 1901.
"9. Hon. W. M. Jenkins, the governor of the territory, never communicated with any member of the first named committee, verbally or in writing, except as shown by the letters hereto attached as 'Exhibits A, B, C, D, and E.' There was never made any order removing the members of the first named committee by the said governor, nor was there any memorandum of such action filed in the governor's office, except as shown by the quotations from the commissions issued to the members of the last named committee, as shown in paragraph 7 of this agreed statement of facts, and the appointment book, a copy of which is hereto attached as 'Ex. H.' The members of the first named committee had no notice that Hon. W. M. Jenkins, governor, proposed taking the action which was taken by him, except afterwards as shown by copies of letters hereto attached as 'Exhibits A, B, C, D, and E,' but the action of said Governor W. M. Jenkins was summary, ex parte, and without a hearing accorded to the members of the first named committee, or either of them.
"10. The persons constituting the committee first named by Hon. C. M. Barnes, governor, were not and have not been guilty of any malfeasance, misfeasance, or nonfeasance in their said position, and had never resigned.
"11. That said John Embry was a member of the legislative assembly which enacted said law creating said committee and normal school.
"12. W. R. Taylor was and is the duly elected, qualified and acting county attorney of Oklahoma county, and as such brought this action against the defendant. *Page 292 
"13. The defendants constitute the board of education of the Territory of Oklahoma, provided for in section 3, article 1, chapter 53 of the Statutes of 1893, and are the board of education charged with the duty of erecting the buildings for and controlling the construction and maintenance of the Southwestern territorial normal.
"14. At the time of the filing of the petition in this action and before such time, the said defendants had refused to recognize the location made by said committee appointed by Governor C. M. Barnes as aforesaid, or to proceed with the erection of the said Southwestern territorial normal at the location so selected by them, but had recognized the location made by the second committee, and were at such time proceeding with the erection of the said Southwestern territorial normal buildings upon the location made by the second committee; were having plans and specifications made, and were about to invite bids for the construction of said building or buildings on the site so selected by the said second committee, and the said board of education had full knowledge of the location by the said first committee of said Southwestern territorial normal site at the said town of Weatherford.
"15. That the estimated cost of the buildings to be erected at the said town of Granite by said board of education amounts to $35,000; that a levy was made on the taxable property of the territory, for the year 1901, as provided in said act, and that the said board of education were about to expend the full sum of $35,000 provided for by the levies authorized in said act at the site so selected by the said second committee.
"16. That the said acts and proceedings of said territorial board of education looking to the construction of the said Southwestern territorial normal transpired at a meeting had and held by said board at the town of Edmond, county of Oklahoma and Territory of Oklahoma; that E. B. Rankin is secretary of said board, and service of summons was had in this *Page 293 
action on the said E. B. Rankin, at his residence in Oklahoma county; that service of summons was had on the other defendants in other counties where they respectively reside.
"17. Proof may be introduced upon the hearing, upon the issue raised by the reply as to the alleged disqualification of said John Embry, and as to how far the said John Embry influenced the deliberations or actions of said second committee in reaching a conclusion. That said second committee never recognized C. M. Cade as a member of said committee, or gave him any opportunity to meet with said second committee.
"18. That the school district in which the town of Granite is located has voted bonds in the sum of $5,000 and deposited said bonds with the territorial treasurer as requested by law, to be expended under the directions of the board of education for fencing, planting trees on and beautifying the school grounds in accordance with plans. (Section 5, Article 10, Chapter 28 of the Session Laws of Oklahoma Territory, 1901.) A copy of the receipt of said territorial treasurer is hereto attached marked 'Exhibit I,' and made a part of this agreed statement of facts. And that the citizens of the town of Weatherford raised by voluntary donation the like sum for like purpose and placed the same in the treasury of said town to be delivered to the treasurer of Oklahoma Territory, and that said sums remain in said town treasury awaiting the result of litigation.
"(Signed.) W. R. TAYLOR, County Attorney. "JOHN SHARTEL AND HOWARD AND AMES AND ROBERT LOWRY, Attorneys for plaintiff.
"GEO. S. GREEN AND SELWYN DOUGLAS, Attorneys for defendants.
"J. C. STRANG, Attorney General." *Page 294 
Exhibit "A" referred to in the stipulation is as follows:
"August 12, 1901.
"Hon. C. B. Ames,
"Oklahoma City, O. T.
"My Dear Sir: — I have understood that you have made some expressions that indicated that you felt that you had not been treated exactly right in regard to the appointment of your successor as a member of the board to locate the Southwest school.
"It might have been better to have addressed you and the other members of the committee and requested your resignations, but in the press of business this was overlooked, but I assure you that I had no desire to hurt your feelings in this matter. My action was based on what seemed to me a public duty, and was purely a business matter. I thought that the personal relations between us, and between myself and each of the members of the old committee, had been such that no one of them could infer that I had a personal motive in changing the committee, as our relations had always been most friendly. I have been receiving a number of letters of protest from the parties interested directly in the location of this school expressing fear, etc., and I supposed that the circumstance of the committee having been appointed after the date of my commission was probably the cause of some distrust on the part of these people, and as the responsibility of the location will eventually rest with me, or with my administration, I felt that it was my duty to appoint members of this committee who, in my judgment, would be absolutely free from any bias in the matter. I do not wish to intimate that the old committee was biased, or that it would have done other than carry out the intention of the legislature as nearly as they were able to know what that was, but I do know that the people interested felt considerable uneasiness, and I feared that whatever location might be made would not be satisfactory, and result *Page 295 
as fortunately as though the personnel of the committee were changed.
"If I have omitted any duty in showing due courtesy to the members of the committee appointed by Governor Barnes, I hope that you will excuse the oversight, as there was no discourtesy intended, and the motives prompting my action were as herein stated, and not of a personal character at all.
"With the best wishes for your personal welfare, I am yours very truly,
"WM. M. JENKINS, Governor."
In addition to the stipulation, some oral evidence was introduced, but it was not material to the determination of the controlling questions herein involved.
The district court found for the plaintiff and entered a decree perpetually enjoining the board and its members from erecting the Southwestern normal building at Granite, and also from expending any of the public moneys in furtherance of such purpose. The defendants in the court below appealed and are the plaintiffs in error in this court.
The legislative assembly of 1901 passed an act providing for the location and erection of the "Southwestern Normal School" in the southwestern portion of Oklahoma. Sections one, two and three, of said act, are as follows:
"Sec. 1. That a normal school for the Territory of Oklahoma is hereby authorized to be established in the southwestern portion of Oklahoma Territory, to be known as the 'Southwestern Normal School,' and to be located and established as hereinafter provided.
"Sec. 2. The purpose of said school when so located as hereinafter provided, shall be the same as the normal schools *Page 296 
of the Territory of Oklahoma located at Edmond, and Alva, in said territory.
"Sec. 3. A committee, consisting of five men, to be appointed by the governor of the territory, is hereby constituted and appointed, as a committee whose duty it is hereby made, and which is hereby authorized and empowered to select a site for the establishment of said normal school as provided for in this act, and within ninety days after the passage and approval of this act, it shall be the duty of the governor of said territory to appoint said committee, and the said committee when so appointed shall, between the tenth day of August, 1901, and the twentieth day of September in said year, visit said southwestern portion of Oklahoma Territory and select a site for the establishment of said Southwestern normal. Such site to be selected within one mile of the corporate limits of an incorporated town, and to contain not less than forty acres of land; Provided: That said committee shall be paid, for such services, the same per diem and mileage as the board of education for the territory is paid, and in like manner."
The controversy in this case arises out of the conflicting acts of the two committees appointed to select the site and determine the location of the contemplated building.
The first contention of plaintiffs in error is that the court had no jurisdiction, for the reason that courts will not attempt to control the action of persons acting in a public character, where there is a matter of discretion or judgment to be exercised.
This contention is unsound, and not applicable to the facts presented by this case. There is no attempt to control any discretionary acts of the board of education or its members; they are not vested with any discretionary powers *Page 297 
in the matter of the location or establishment of the institution. The location is to be fixed and determined by the committee appointed for that purpose, and when such committee has performed its duties within its powers and authority then the members of the board of education are required to proceed with the erection of the building and establishment of the school.
The next objection to the jurisdiction of the court is, that it is an action to try the title to an office. This position is equally untenable. The committee was appointed for a specific object; it had performed its duty, and its appointment had terminated by operation of law before this action was commenced. The purpose of the action is to prevent the members of the board of education from doing unauthorized acts; from improperly expending the public funds for unauthorized purposes; to prevent them from entering into an unauthorized contract. It is a well settled doctrine that courts of equity have power to enjoin ministerial acts of public officers which are ultra vires, and beyond the scope of their authority. (Noble v. Union River Logging R. Co., 147 U.S. 164; Osborn etat. v. The President and Officers of Bank of the United States,
9 Wheat. 739; Wilson v. Lambert, 168 U.S. 612; Leader PrintingCo. v. Lowry, 9 Okla. 89; State v. Metschau, 46 Pac. Rep. 791; State v. Elliott, 11 Ind. 211.)
The expenditure of public money at a place or for a purpose not authorized by law, is a misapplication of the public funds, and a sufficient injury to enable the territory, through one of its officers authorized to represent it, to call upon a court of equity for relief. (State v. Metschau, 46 Pac. Rep. 791.) *Page 298 
While courts of equity will not, in an action for injunction, try the title to a public office, nor attempt to control the action of executive officers in the appointment or removal of officers, yet where an inquiry into the legality of such acts is an incident necessary to the determination of a question rightfully within the power of the court, such incidental question may be inquired into sufficiently to enable the court to rightfully determine the question properly before it. Hence, while in this cause the court will not attempt to determine which of the two committees appointed to select the site and locate the Southwestern normal school was entitled to the position or its emoluments, nor whether the governor acted properly or improperly in appointing a second committee, nor into his motives for such action, yet for the purpose of determining whether the board of education is acting within the scope of its powers and authority, we may and will inquire into the acts and authority upon which the validity of the actions of the board of education must necessarily depend.
The further contention is urged by plaintiffs in error that the county attorney of Oklahoma county had no authority to bring this action; that the attorney general of the territory was the only person authorized to sue for the territory in this character of action.
Section 1705, Statutes of Oklahoma, 1893, provides:
"It shall be the duty of the county attorney of the several counties to appear in the district courts of their respective counties and prosecute and defend, on behalf of the territory, or his county, all actions or proceedings, civil or criminal, in which the territory or county is interested or a party; and whenever the venue is changed in any criminal case, or in any civil action or proceeding in which his county or the territory *Page 299 
is interested or a party it shall be the duty of the county attorney of the county where such indictment is found, or the county interested in such civil action, or proceeding, to appear and prosecute such indictment, and to prosecute or defend such civil action or proceeding in the county to which the same may be changed."
By section 5961, Statutes of Oklahoma, the duties of the attorney general are defined as follows:
"He shall appear for the territory and prosecute and defend all actions and proceedings, civil or criminal, in the supreme court, in which the territory shall be interested as a party; and shall also, when requested by the governor or either branch of the legislature, appear for the territory and prosecute or defend in any other court or before any officer in any cause or matter, civil or criminal, in which the territory may be a party or interested, and shall attend to all civil cases remanded by the supreme court to any district court in which the territory is a party or interested."
The statutes of Kansas relating to the duties of county attorney and attorney general, are almost identical with ours, and the supreme court of that state has held in a number of cases that the county attorney is the proper officer to prosecute actions of this character. (Craft v. Jackson,5 Kan. 518; Bobbett v. State, 10 Kan. 9; Bartlett v. State,13 Kan. 99; State v. Faulkner, 20 Kan. 541; State v. Marion Co.,21 Kan. 420; Hornaday v. State, 62 Pac. Rep. 329.)
We think these authorities applicable to a correct interpretation of our statutes, and that the county attorney of Oklahoma county had the authority to bring and prosecute this action, and this without making the allegations in the petition that the attorney general and governor were advising the proceedings which were sought to be remedied by the suit. *Page 300 
The next question is the vital and controlling one in this case: Which committee had legal authority to select the site and location for the Southwestern normal school?
The act of the legislature authorizing the establishment of this school was approved the 8th day of March, 1901. By the provisions of section 3 of this act, a committee of five was constituted and empowered to select a site for the establishment of said normal school, and the governor was empowered and authorized to appoint said committee within ninety days from the passage of the act. On the 6th day of May, 1901, Governor Barnes appointed the first committee, which within the time limited selected Weatherford as the site. On August 8, 1901, Governor Jenkins, who had succeeded Governor Barnes, appointed another committee, which within the time limited for making the selection of a site, selected Granite as such site. To avoid confusion, these boards have been designated the "Barnes Committee" and the "Jenkins Committee." The territorial board of education recognized the location made by the Jenkins committee, and was proceeding to establish the school at Granite when this suit was commenced.
Much discussion has been indulged in as to whether these appointees were officers, employees or commissioners, and whether they were subject to removal at will by the governor. We do not find that a determination of these questions are necessary. The appointees were a committee, selected for a specific purpose and so soon as that duty was performed their functions ceased. The governor was authorized to and charged with the duty of appointing said committee, and the time within which he was authorized to perform his duty was limited *Page 301 
in duration; the position of the committee was not a continuing one; the power to appoint was not a continuing one beyond the limit fixed by statute. The governor exercised the power conferred and performed the duty within the time limited, and the committee appointed within the time performed the duty imposed upon it, and made report of its work.
If the second committee had been appointed within the time limited by statute, then a very different question would be presented. But the limit on the authority of the governor having expired before the second committee was appointed, his actions were functus officio, and the second committee was not even a de facto committee, unless the first committee were removed, or had in some manner vacated their positions. It is admitted in the stipulation that the first committee was neither removed, nor had they resigned prior to the appointment of the second committee.
It is contended by plaintiffs in error that in the absence of some statutory regulation or prohibition, the power to remove is incident to the power to appoint, and that the appointment of a second officer is ipso facto a removal of the first. Conceding the first proposition to be sound, the second is subject to some limitations. The supreme court of the United States has repeatedly held that where there is no statutory mode regulating, or prohibition of the removal of public officers, that the power of removal is incident to the power of appointment, especially when the tenure is not fixed by the constitution. (Ex parte Hensen, 13 Pet. 230; Parson v. UnitedStates, 167 U.S. 324; Reagon v. United States, 182 U.S. 419.)
And in the Hensen case, supra, it was said: "Where the *Page 302 
appointing power is a continuing one, the new appointment of a successor would be per se a removal of the prior incumbent." But this rule cannot be invoked in the case under consideration. Governor Jenkins never made any order of removal of the Barnes committee; his only official act was the appointment of the second committee, each of whom he designated as "instead of __________, retired."
These appointments were without authority at the time they were made, and hence conferred no authority on the appointee. It is clear that it was not the purpose of the governor to remove the first committee and leave the law inoperative. This may be gathered from his letter of explanation and apology sent to the members of the Barnes committee. It was only his purpose to substitute a new committee for the first, and have the institution located by a committee of his own selection. The appointments made by him, being of no force as appointments, it cannot be said that they were effective as removals. And if it were conceded that he had the power to remove the old board at the time he made the appointments of the second committee, (which we do not wish to be understood as conceding) yet he did not exercise such power in a manner to make it effective, and the Barnes committee was never divested if its powers, and its acts were within its authority.
The judgment of the district court of Oklahoma county is affirmed.
It is further ordered that the plaintiffs in error pay the costs of this proceeding.
Burwell, J., who presided in the court below, not sitting; Irwin, J., absent; all the other Justices concurring. *Page 303