**THREADGILL et al. v. PETERSON et al.**

No 14169—Opinion Filed Sept. 18, 1923.

(Syllabus.)

1. **Schools and School Districts—Judgment on Illegal Contract—Vacation on Taxpayers' Motion.**

A timely motion of taxpayers of a municipal subdivision to be made parties to an action at law for the purpose of defending against a judgment being rendered or becoming final, on a contract pleaded by plaintiff made by the officers of the municipality in excess of their contractual power, should be granted and the taxpayers made parties.

2. **Same—Fraud in Procurement of Judgment.**

Under and by reason of section 26, article 10 of the Constitution, and section 1615, Rev. Laws 1910, as amended by section 9 of chapter 80 of the Session Laws of 1911, a contract made by a school district board in excess of the estimate made and approved for that purpose for the current fiscal year is of no legal or binding force as against the school district. And where plaintiff pleads such a contract and a judgment is rendered thereon as against the district, through acquiescence or connivance of the officers thereof, the same constitutes fraud in law as against the district and its taxpayers. When such is made to appear to the trial court by a timely petition of taxpayers to vacate the judgment or otherwise, it is the duty of the court to set such judgment aside.

3. **Same—Refusal to Vacate—Reversal.**

Record examined, and held, that the trial court should have granted the petition of the taxpayers to vacate and set aside the judgment, and dismissed plaintiff's petition. For failure to do so, the cause is reversed, with directions to the district court of Coal county to vacate the judgment and dismiss plaintiff's petition.

Error from District Court, Coal County; J. H. Linebaugh, Judge.

Petition by C. M. Threadgill and others to vacate judgment in favor of John Peterson. Petition denied, and petitioners bring error. Reversed.

C. M. Threadgill, for plaintiffs in error.

E. Moore, for defendants in error.

BRANSON, J. The appeal in this case is prosecuted by C. M. Threadgill, Tom Mitcham, Isaac Vogel, W. A. Hinkle, and numerous taxpayers of the city of Coalgate, Coal county, Okla. The necessity for their appeal grows out of this state of facts: On the 31st day of August, 1921, the board of education of the city of Coalgate, Okla., made and executed a contract with one John Peterson to repair the high school building of said city, or rather the high school building of independent school district No. 1, which embraces the city of Coalgate, for which the said John Peterson was to receive the sum of $2,785, plus an additional amount for extra work that might be required to place said building in proper condition; the said contract, among other things, providing:

"It is expressly understood and agreed that the same is not and shall under no circumstances be by the said party of the second part, his heirs, executors, administrators or assigns, considered, held or offered as a charge against the individuals of said board, or any of them."

Under this contract, the said John Peterson performed the labor and furnished the material for repairing the school building, and on the 6th day of October, 1921, brought a suit in the district court of Coal county against the board of education of said city of Coalgate to recover a judgment on said contract in the sum of $3,250. On the same date, said suit was filed the said board of education, by John R. Hickman, president, J. W. McWilliams, vice president, and Walter E. Jacobs, clerk, filed its waiver and answer, in which it recites:

"For answer to plaintiff's said petition filed herein, the defendant says it has examined said petition, and that the amount claimed to be due by the plaintiff is correct; that said sum is just, due and unpaid, and that the defendant has failed to pay the same for the reason that it has no funds available with which to pay the same."

On the same date, to wit, October 6, 1921, the same being one of the regular days of the September, 1921, term of the district court of said county, a judgment was entered in favor of the plaintiff, John Peterson, in the sum prayed for and costs, based upon the said petition of the plaintiff, the waiver of summons, and answer of the defendant. On the 11th day of October, thereafter, these plaintiffs in error filed in the said cause a petition to vacate and set aside said judgment, for the reason, among others assigned:

"These plaintiffs state that said judgment is based upon a void contract, the said contract having been made without any available funds to pay the consideration, and the said judgment is a void judgment, being based upon a void contract," etc.

The plaintiff filed an answer to the petition of the said taxpayers to vacate said

judgment, setting up that the repairs to the said school building in question were necessary, and that the labor and the material had been furnished by him, and on the trial thereof to the court, on the 14th day of September, 1922, the court denied the petition to vacate the judgment, from which order overruling the application to vacate the judgment the plaintiffs in error perfect this appeal.

The only assignment of error made by the plaintiffs in error is that the court erred in overruling their petition to vacate the judgment. The record made on the hearing of the petition to vacate the judgment shows, in substance, that when the budget for said school district for the fiscal year 1921-22 was submitted to the excise board of Coal county an item was contained therein of $6,500 for maintenance of buildings, grounds, and for insurance; that this item was not allowed by the excise board, but was reduced to the sum of $400.

The defendant in error, Peterson, nor the school district involved has filed any brief in this cause. But from an examination of the record and the brief of the plaintiffs in error, the situation is clearly revealed.

In the court below, the defendant in error, Peterson, filed a motion to strike from the files the taxpayers' petition to vacate the judgment rendered in his favor on October 6th, on the ground that the taxpayers had no right, title, or interest in the subject-matter in question, and no authority of law for the proceeding there sought to be maintained. But the trial court overruled this contention, and there is no cross-petition in error by the defendant in error, Peterson, and the question of the right of the taxpayers to pursue this remedy might be considered not now here for review. But we think the taxpayers had the right to the remedy invoked. Section 4691, Rev. Laws 1910, provides any person may be made a party who has or claims an interest in the controversy adverse to the plaintiff.

A taxpayer who sets up that an illegal judgment about to be rendered against a political subdivision will impose an unauthorized and illegal burden upon his property is so interested in the eye of the statute that he can maintain an injunction, if necessary, to invoke relief in equity, for that the express provisions of section 4881, Rev. Laws 1910, provide:

"An injunction may be granted to enjoin the enforcement of a void judgment, the illegal levy of any tax, charge or assessment, or the collection of any illegal tax, charge or assessment, or any proceeding to enforce the same, and any number of persons whose property is affected by a tax or assessment so levied may unite in the petition filed to obtain such injunction. An injunction may be granted in the name of the state to enjoin and suppress the keeping and maintaining of a common nuisance. The petition therefor shall be verified by the county attorney of the proper county, or by the Attorney General, upon information and belief, and no bond shall be required, but the county shall, in all other respects, be liable as other plaintiffs."

Ashton v. Board of County Commissioners, 45 Okla. 731, 147 Pac. 305; Bowles v. Neeley et al., 28 Okla. 556, 115 Pac. 344.

In the case of Kellogg v. School District, 13 Okla 285, 74 Pac. 110, this court said:

"From the foregoing authorities, it appears that there are two roads for us to choose from—one, a dim trail, traveled by but few, and beset with many difficulties; the other, a broad, well-paved thoroughfare, numerously traveled, and leading to satisfactory results. Should there be any hesitation? We think not. It is the duty of those charged with the authority of establishing the principles which shall underlie and furnish the basis for our jurisprudence to adopt those rules which, when applied to actual conditions, will bring about the best results to the community at large. The Supreme Courts of the states of Ohio and New York, in vigorous language, denounced the rule first adopted by the courts in those states, and which is the same as now prevails in Kansas, and declared that its effect had been to practically deny justice to the taxpayers, and subject them to official pillage and robbery, without remedy or means of redress. We prefer to adopt the rule which permits the taxpayer to invoke the aid of the courts to protect himself from being burdened with taxes to pay illegal obligations, and to prevent the consummation of unauthorized acts by municipal officers. That the district courts, sitting as a court of equity, will by injunction restrain public officers from misappropriating public funds, or expending public funds at unauthorized places or for unauthorized purposes, was settled by this court in Board of Education v. Terr. ex rel. Taylor, County Attorney, 12 Okla. 286, 70 Pac. 792."

While this statute does not expressly authorize the method of procedure pursued by the plaintiffs in error, the statute evidently presupposes that the taxpayer is an interested party in any proceeding which may place an added burden upon his shoulders. If the taxpayers can take timely action before any judgment is rendered

which will forestall in an action at law any proceeding to levy or enforce an illegal tax, charge, or assessment and in which the results contemplated by this statute can be obtained, the legal remedy should be pursued before the equitable remedy is invoked.

The trial court allowed the taxpayers to be made parties, intervene, and file their petition to vacate the judgment, and they complain on appeal because their petition to vacate was denied.

Section 5267, Rev. Laws 1910, provides the district court shall have power to vacate its judgments at or after the term rendered.

"4th. For fraud practiced by the successful party in obtaining the judgment or order."

If the contract sued upon had no sanction in law at the time of its execution by the officers of the school district and the defendant in error, Peterson, the effort on the part of the plaintiff, Peterson, and the officers of the school district to fasten onto the district a judgment based on such contract was a fraud upon the school district and its taxpayers, which should have impelled the district court to grant the taxpayers' petition and vacate the judgment and dismiss plaintiff's petition.

The real question necessary to be discussed, therefore, in passing upon whether or not the trial court should have vacated the judgment against which the plaintiffs in error sought relief, depends upon the validity or the invalidity of the contract on which the judgment is based. The board of education of the school district in question entered into the contract with Peterson for the work and material furnished by him, purporting to bind the municipality they represented in the sum sued for, whereas there was no estimate made and approved, and no tax levy made to raise funds to pay the amount incurred by said contract. Is such contract valid? Section 1615, Rev. Laws 1910, as amended by section 9 of chapter 80 of the Session Laws of 1911, provides:

"It shall be unlawful for the board of county commissioners, the city council or the commissioners of any city, the trustees of any town, board of education, township board, school district board, or any member or members of the aforesaid commissioners, or any of the above named boards, to make any contract for, incur, acknowledge, approve, or authorize any indebtedness against their respective municipality or authorize it to be done by others, in excess of the estimate made and approved by the excise board for such purpose. for such current fiscal year, or in excess of the specific amount authorized for such purpose by a bond issue. Any such indebtedness, contracts incurred, acknowledged, approved, allowed, or authorized in excess of the estimate made and approved for such purposes for such current fiscal year or in excess of the specific amount authorized for such a bond issue, shall not be a charge against the municipality whose officer or officers contracted, incurred, acknowledged, approved, allowed, or authorized or attested the evidence of said indebtedness, but may be collected by civil action from any official contracting, incurring, acknowledging, approving, or authorizing or attesting such indebtedness, or from his bondsmen."

Taxes can be levied and the moneys arising therefrom expended only as provided by express law. More than once this court has said as much, but the already heavily burdened municipalities are constantly made to know that their administrative officers not unknowingly undertake to incur indebtedness entirely without the sanction of law. In the case at bar this was not only done, but the officers lent their aid to a species of prostitution of the court in an attempt to make their unauthorized contractual acts effective. The success of such attempts makes the courts parties to lawlessness; makes the citizens' property subject, not to the burdens of taxation the law through its enforcement machinery imposes, but to the arbitrary will of individuals who for the time being are in office. The contractual power of the board such as here, when exercised, binds the municipality, but binds it only when exercised within the limits and bounds of the express provisions of the law. The source of all revenue for governmental purposes is the people; the process of securing the revenue is taxation. There are necessarily officers of the municipalities who must officiate in the expenditure of public funds. There are necessarily officers who must determine how much money is necessary each fiscal year in each municipality, and for what purpose or purposes such moneys are necessary in order that a proper tax levy may be made upon the assessed valuation of the properties of the municipality subject to taxation. The officers who expend the money can expend only so much as is provided for the specific purpose for which the estimate is approved and the tax levy made. When that amount is expended, or contracts made which when satisfied will exhaust such funds, the officers of the municipality, as here, have no further power to make

any contract which in any wise imposes any liability in law upon the municipality or political subdivision they represent. If such pretended contract is made, the officers are personally liable for any amount earned by him with whom the same is made.

The statute hereinabove quoted, which finds its sanction in the constitutional provisions of this state (see Williams' Annotated Constitution, section 26, art. 10), is too plain for any man capable of holding such office to mistake its meaning. To pretend to excuse its violation on the ground of necessity is merely in another form the plea in mitigation of punishment that "necessity prompted larceny." It furnishes neither a reason nor an excuse which, when it calls, finds the law "at home." It is outlaw, in the sense it is outside of any sanction of the law, except that the law in its zeal to save without loss the less guilty makes a liability personally on the officers entering into such agreement.

The school house in question may have needed repairs. The legal way to bind the school district, as such, is the approval by the excise board of an item in the budget for the specific purpose, and to make a levy on the taxable property of the district to raise the revenue necessary to pay the same. Since in the judgment of the excise board in not approving the item for such intended purpose the said improvements were unnecessary, no way to bind the school district, by contract during that fiscal year, for such purpose made by the board, finds any sanction in the provisions of the law of the state.

From the record, it is clear that the board knew in this case, and the contactor knew, that this was the law, for the contract shows on its face that the board undertook to contract against the personal liability of the members of the board imposed by the statute, for that the contractor, Peterson, agreed in writing that he would look solely to the municipality for his compensation. This kind of provision could have been prompted only by a thorough consciousness that the law forbids any liability on the municipality under such an agreement, but specifically places liability on the officers who enter into such contract.

The writer is an enthusiast for liberal education for all youths, but the execution of the modern ideas of the necessary comforts thereto should be kept at least within the provisions of the law, if not within the limitation of the fair estimate of the financial ability of the school district involved. We seem to have forgotten the frugal ideas of the stable citizenship of school districts which prompted their citizens of 25 years ago or more to take a few shingles and a few boards and donate a few days' time to repair the school house or church, as the case might be. Far better was this than the speed now demonstrated by officers sworn to uphold the law, who are as reckless in their apparent purpose to evade it as the spectacular spendthrift who, riding in another's car, and without money, directs the station keeper to put in "ten of gas and one of lube," to run 40 miles per hour, when the limit is 15.

Banks are striving, many unsuccessfully, to preserve the credit of themselves, their communities, and the people. A readjustment is imperative; brakes and sense are demanded in the world to divert civilization from precipitous destruction. Under such conditions, officers of the law should cut out so much gas and "lube," and reduce within their limit.

The defendants in error evidently relied, to give color of law to their act, on the case of Smartt v. Board of County Commissioners, 67 Okla. 142, 169 Pac. 1101. This was an action brought by the sheriff of Craig county, Okla., for compensation for feeding prisoners, after the estimate made and approved for such purpose for the current fiscal year had been exhausted. In brief, the difference between the liability there and in the case at bar is that one was a liability arising by operation of law, and the other arising by operation of contract.

From the record made, there being no legal liability created by the contract pleaded by the defendant in error against the school district in question, the trial court should have sustained the petition of the plaintiffs in error to vacate and set aside said judgment and dismissed the petition, and his action in refusing to do so should be reversed. This cause is therefore reversed, with instructions to the district court to grant the petition to vacate and set aside the judgment and dismiss the plaintiff's petition.

JOHNSON, C. J., and KANE, KENNAMER, NICHOLSON, COCHRAN, HARRISON, and MASON, JJ., concur.