MOORE et al v. CRABTREE et al.

No. 17502. Opinion Filed July 19, 1927.

(Syllabus.)

1. **Municipal Corporations—Equita le Remedy of Taxpayers Against Illegal Expenditures or Creation of Debts.**

A resident taxpayer, although he shows no special private interest, may invoke the interposition of a court of equity to prevent an illegal disposition of the money of a municipality, or the illegal creation of a debt which he in common with other property owners may otherwise be compelled to pay.

2. **Same—Right of Taypayers to Defend Against Illegal Judgment Where Municipal Officers Remiss.**

A timely motion of taxpayers of a municipal subdivision to be made parties to an action at law for the purpose of defending against a judgment becoming final, where they plead that the officers of such municipality are remiss in the discharge of their official duties and have neglected and refused to protect such taxpayers against unwarranted judgments, should be sustained where it appears clear that such judgment is unauthorized.

Error from District Court, Wagoner County; E. A. Summers, Judge.

Action by Ida Crabtree against James E. Gibson, J. W. Wymer, the Commercial Casualty Insurance Company, George H. Foster, E. L. Kirby, T. M. Markley, and B. V. Leonard; E. L. Moore and John T. Baird, interveners. Judgment for plaintiff, and interveners appeal. Reversed.

L. L. Mosher and T. J. Lillard, for plaintiffs in error.

P. E. Reed, E. L. Kirby, and T. M. Markley, for defendants in error.

PHELPS, J. Jim Gibson was a night policeman of the city of Wagoner, of which city J. W. Wymer was mayor, and on October 11, 1925, in attempting to arrest one Price Crabtree, upon a charge of drunkenness, shot and killed said Crabtree. On April 10, 1926, Ida Crabtree, in behalf of herself as the widow and for the benefit of the six minor children of said Price Crabtree, filed suit in the district court of Wagoner county against Jim Gibson, the city of Wagoner, J. W. Wymer, mayor, and the Commercial Casualty Insurance Company, surety upon the bond of said J. W. Wymer, mayor, alleging that she and said minor children suffered damages in the death of their husband and father, Price Crabtree, in the amount of $10,000, all because of the negligence of the aforementioned defend-ants, which negligence resulted in the death of said Price Crabtree.

Summons was issued, returnable April 20th, commanding defendants to answer on or before May 10th. On April 30th, the defendants filed their separate answers, and on the same day a stipulation was filed in court between the parties plaintiff and defendant, agreeing that the court should dismiss the cause with prejudice as to all the defendants except the city of Wagoner and render judgment in favor of plaintiff and against the defendant, city of Wagoner, in the sum of $800. Judgment was so rendered in pursuance of such stipulation.

On the following day plaintiffs in error, E. L. Moore and John T. Baird, as citizens and taxpayers of the city of Wagoner, on their own behalf and on behalf of other taxpayers similarly situated, filed their motion alleging that the city commissioners were remiss in their public duty in not properly defending said suit; that the interest of the taxpayers in such matter had been neglected, and that the lawfully constituted officials had refused and neglected to perform their duty in the premises, and prayed that the judgment be set aside and the cause reopened and a new trial granted.

At the same time they obtained a restraining order restraining the payment of the judgment. On May 7, 1926, said matter came on for hearing, at the conclusion of which the motion for new trial was overruled, and plaintiffs in error, E. L. Moore and John T. Baird, prosecute this appeal.

Counsel for plaintiffs in error claim that the court erred in refusing to vacate the judgment rendered against the city of Wagoner. It appears from the record that when the motion to vacate the judgment came up for hearing in the district court it was admitted that plaintiffs in error were resident taxpayers of the city of Wagoner. This being admitted, they introduced the records and files of the case, including the stipulation and journal entry of judgment, and rested; whereupon the trial judge, in overruling the motion, dictated his conclusions into the record, and from the remarks of the trial judge, taken in connection with the stipulation and the judgment rendered upon the stipulation, it is quite evident that the judgment was nothing more than a compromise settlement on the part of the city commissioners, which settlement had the sanction of the court in the form of a judgment. There is no serious contention that the petition stated any cause of action whatever against the city of Wagoner.

In overruling the motion for new trial the trial judge made this statement from the bench:

"* * * The court knows from a practical standpoint, and as a lawyer, that if the settlement which is attacked had not been made, the city would have spent almost as much for counsel fees and expenses as it has paid by way of settlement here. Not only so, but the rule laid down in the Foster Case comes very near to being an opening wedge on the question of the liability of the city. * * *"

Oklahoma City v. Foster, 118 Okla. 120, 247 Pac. 80, is, doubtless, the authority referred to by the learned trial judge, but a careful examination of that case shows such a materially different state of facts to those pleaded in the instant case that it cannot be considered authority sustaining the judgment sought to be set aside here. However, City of Shawnee v. Jeter, 96 Okla. 272, 221 Pac. 758, and City of Shawnee v. Rousch, 101 Okla. 60, 223 Pac. 354, are cited with at least some degree of justification as upholding the contention that the instant judgment is not, under the pleadings, supported by the law.

The record amply justifies the conclusion that the pathetic spectacle of a widow with six small, fatherless children being deprived of the support and companionship of the husband and father at the hands of an employee of the city, appealed very strongly to the sympathies of the city commissioners, and when they found themselves confronted with a $10,000 lawsuit with the consequent expense and annoyance, they, doubtless, thought it a good business proposition to make settlement, which the learned trial judge said he "approved as a business proposition and as a matter of conscience."

We find no fault with this laudable desire on the part of public officials, and from a strict business standpoint they may have been justified, but, as commendable as their attitude and desires may have been, such settlement and judgment cannot stand when properly attacked by taxpayers having the right to question the settlement, unless such settlement finds sanction in the law.

In overruling the motion the learned trial judge observed that he was "not satisfied that the interveners and movants (plaintiffs in error here) have any legal right to control the course of conduct of a tort action against the city." We quite agree that such a course may be seriously challenged unless the complainant has a financial interest in the result of the action, but as far back as 1909, in Hannan v. Board of Education of City of Lawton, 25 Okla. 372, 107 Pac. 646, in the fourth paragraph of the syllabus, this court said:

"A resident taxpayer, although he shows no special private interest, may invoke the interposition of a court of equity to prevent an illegal disposition of the money of a municipality, or the illegal creation of a debt which he in common with the other property owners may otherwise be compelled to pay."

This rule seems to have been followed with varying degrees of emphasis down to the present time and, as emphasized in Threadgill v. Peterson, 95 Okla. 187, 219 Pac. 389, is so potently applicable to the facts herein that we are constrained to refer to that case, adopt and incorporate the syllabus, reasoning, and citation of authorities into and make it a part of this opinion, and, with this, further discussion is unnecessary. This doctrine was reasserted and emphasized in Wood v. Phillips, 95 Okla. 255, 219 Pac. 646.

In Baker v. Vadder, 83 Okla. 140, 200 Pac. 994, in the fifth paragraph of the syllabus, this court said:

"In order to maintain an appeal or writ of error to this court, it is necessary that appellant shall be injuriously affected or aggrieved by the judgment, order, or decree complained of; therefore one cannot appeal from a decision, however erroneous, which does not affect his substantial rights."

It necessarily follows that the converse is true, that one whose substantial rights are affected may appeal. Therefore, in view of the conclusions here reached, the judgment of the trial court is reversed, with directions to sustain the motion to vacate the judgment and to take such further proceedings, not inconsistent with the views herein expressed, as the facts may justify.

All the Justices concur, except HUNT, J., who dissents.