## BOARD OF COUNTY COM'RS OF TULSA COUNTY v. MULLINS et al.

No. 33669. April 18, 1950.

*217 P. 2d 835.*

Elmer W. Adams, Co. Atty., and Hugh Webster, Asst. Co. Atty., Tulsa County, both of Tulsa (John H. Poe, of Tulsa, of counsel), for plaintiff in error.

Frank Hickman and Moseley & Reynolds, all of Tulsa, for defendants in error.

O'NEAL, J. This is an appeal from a judgment of the district court of Tulsa county, Oklahoma, in favor of defendants, in an action commenced by the board of county commissioners of said county against John C. Mullins and L. O. Mitchell, d/b/a Arena Roller Rink, and Tulsa County Fair board, intervener, to cancel a five year lease given by the Tulsa County Fair Board to Mullins and Mitchell covering the "pavilion building located on the Tulsa County Fair grounds."

The land upon which the pavilion was constructed was acquired in 1925

by Tulsa county for fair purposes under the provisions of chapter 85, S. L. 1923-24. The pavilion was constructed from proceeds of a bond issue authorized by chapter 26, S. L. 1929. The Tulsa Fair Board had operated in prior years under chapter 159, S. L. 1925, as amended by chapter 242, S. L. 1929; article 5, chapter 38, S. L. 1935, and article 12, chapter 38, S. L. 1936-37. At the time this action was commenced it was operating under chapter 2, Title 2 (House Bill No. 97) S. L. 1943. When the lease in question was executed the management and operation of the exposition and fair was under a board of directors of seven members appointed under the provisions of section 3 of House Bill No. 97, 1943 S. L. Purporting to act under the provisions of section 13, House Bill 97, S. L. 1943, the board of directors of the exposition and fair executed the lease here involved. The lease dated September 30, 1946, by its terms leases, lets, demises and rents to said defendants, John C. Mullins and L. O. Mitchell, the building located on said fair grounds known as the fair ground pavilion, for a period of five years commencing September 30, 1946, for the purpose of operating a skating rink and other public entertainment. The lessees agreed to pay as rental for said pavilion, after deducting Federal and state taxes, 22½% of the admission charges received for roller skating, in any event, not less than $150 per month. Lessees further agreed that in the event they should use said pavilion for attractions or purposes other than roller skating, to pay lessor as rentals $100 for each 24 hours or fraction thereof the pavilion should be so used.

Lessor agreed to keep the pavilion building in good repair insofar as the exterior of the building, or the plumbing therein, or any structural part of the building, is concerned and lessees agreed to keep and maintain the building in as good state of repair as it was at the commencement of the lease, natural wear and tear and damages by the elements excepted, and to pay light,

heat and water bills and any other expenses incidental to the use of said building incident to the occupancy of same by lessees. The lease, in paragraph 5 thereof, further provides:

". . . It is understood that lessor retains the right of the use of said pavilion, free from the rights of lessees, for three events during each calendar year, namely, The Junior Live Stock Show in the month of March, the ten-day Johnnie Lee Wills Rodeo in the month of May, and The Tulsa County Fair & Exposition in the month of September, and of each calendar year during the term of this lease; and also the Tulsa Policemen's Circus for the month of March 17 to 23, 1947. Provided, however, that during the Junior Live Stock Show and sale each year, the lessor will cover the skating floor, or such portion thereof as is deemed necessary for use during said Live Stock Show and Sale; with sufficient thickness of lumber or floor covering as to adequately protect and preserve said skating floor for the lessees herein and in the same manner as the lessor has done in previous years during said Live Stock Show and Sale; and provided further, that during the events of the Johnny Lee Wills Rodeo and the Tulsa County Fair and Exposition that the lessees herein shall make the said pavilion available by removing at their own expense the portable sectional flooring maintained by them for roller skating purposes."

Plaintiff seeks cancellation of the lease on the ground that the fair board, in the execution of said lease as an agency of the county, was without power or authority of law to divest itself, or Tulsa county, of the possession, custody and control of said pavilion building for a period of five years or at all; that the fair board, as constituted under chapter 2, sec. 2, S. L. 1943, was without authority to grant a lease which in effect is to take the pavilion from the custody and control of the board of county commissioners; that section 13, Title 2, chapter 2 (House Bill 97) S. L. 1943, is invalid so far as it proposes to take control of county property out of the board of county com-

missioners and is invalid for the further reason that it is unconstitutional, ambiguous and incapable of sensible construction; that if said section 13 is to be construed as granting such power to the fair board, then said section is unconstitutional and void as being contrary to section 15, art. 2, of the State Constitution, and article 1, sec. 10, of the Federal Constitution, which prohibit an enactment by the state of any law impairing the obligation of contracts; that the lease involved is against public policy; that the lease is invalid for the reason that it diverts the use of said building from agricultural and public purposes to private commercial purposes contrary to the purposes for which said building was constructed; that said lease is invalid for the reason that it permits the installation of a floor in said building, and that by said installation and other material alterations the agricultural interests of Tulsa county have been ousted from the use of said building, and that same has been rendered useless for the purposes for which it was constructed. Finally, it is alleged that the fair board, by the execution of said lease, obligated said county for the expenditure of funds and revenue beyond the fiscal year in which the contract was made, contrary to the provisions of section 26, art. 10 of the Constitution.

The answer of defendant admits substantially all the preliminary allegations of the petition, and then alleges that prior to the enactment of House Bill No. 97, supra, the fair board acted under Senate Bill No. 479, 1937 S. L., and prior thereto the Tulsa County Fair was managed and operated under board of directors appointed under the authority of Senate Bill No. 290, 1935 S. L.; during said time, a period of more than six years, defendants had been the lessees of said pavilion under various similar leases, and that the renting of said pavilion has been without interference with said pavilion for any public purposes connected with the holding of a public county fair or exposition. The answer, then, generally and specifically, denies all the allegations of the petition as to the alleged invalidity of said lease contract or the laws under which it was executed.

The Tulsa county fair board asked and obtained leave, over the objection of plaintiff, to intervene and filed their plea of intervention asserting, in substance, that the board was acting under the authority of valid statutes of the State of Oklahoma in making the lease, and was within the law in executing said lease.

The issues thus joined were tried to the court. The plaintiff submitted its evidence and defendants demurred thereto. The court sustained their demurrer and entered judgment for the defendants, and plaintiff appeals.

Plaintiff first contends that the lease is invalid for the reason that it excludes the public from county-owned property for a period of years, and that section 13 of the Fair Board Act, Title 2, chapter 2 (House Bill 97), S. L. 1943, is unconstitutional to the extent that it permits such absolute and unrestricted conveyance. Said section 13 provides:

"Section 13. All property heretofore acquired by any such county by virtue of the provisions of various legislative acts for Exposition and Free Fair purposes is hereby declared to be the property of any such county coming within the provisions of this Act, and is hereby placed under the custody and control of the Board of County Commissioners in such county the same as other county property, and to be used for the purposes of carrying out the provisions of this Act; provided, however, that the Board of Directors of such Exposition and Fair shall have the right to lease or rent any of the property belonging to it, including all grounds, building and equipment of the Exposition and Fair, for any purpose, and upon such terms as they deem proper, during such time as the same is not being used for Exposition and Fair purposes, and use the proceeds of such lease or rental for the general purposes of this Act."

The law does not prohibit the leasing of all county-owned property simply because it is owned by the county. All property acquired by the county at tax resale may be leased by the board of county commissioners so as to exclude the general public therefrom. 68 O.S. 1941 §432i.

Plaintiff cites and relies in part upon Derr v. City of Fairview, 121 Okla. 23, 247 P. 45.

The property there involved was a portion of a city park which had been dedicated to the public for recreation purposes. It is there held that where a public park is by the city dedicated to the public for recreation purposes, the same becomes a public utility and so long as it remains such, the city is without authority to lease a portion thereof for 25 years for private gain and profit. To the same effect is Nebraska City v. Nebraska City Speed and Fair Association, 107 Neb. 576, 186 N. W. 374. In City National Bank of Ft. Smith v. Incorporated Town of Kiowa, 104 Okla. 161, 230 P. 894, the distinction between property purchased and held by municipal corporations for the use of the corporation as an entity and that purchased and held by such corporation for the public use and benefit of its citizens is pointed out. It is there said that as to the former class, the power of the corporation to dispose of it is unquestioned. But the rule is different as to the latter class. That it is only when the public use has been abandoned or the property has become unsuitable or inadequate for the purpose for which it was dedicated, that a power of disposition is recognized in the corporation.

Those cases have no application here for the reason that the property involved is not park property and has not been dedicated to the use of the public for recreation purposes. It is not a public park and is not open to free use by the public for such purposes at any time. The statute provides that an admission fee of not to exceed 50c per person may be charged when the property is being used for fair purposes. Furthermore, the right of the fair board to use said property for the purposes for which it was acquired is expressly provided as shown by that part of paragraph 5 of the lease quoted above.

It is further contended that section 13 of the 1943 Act classifies all property used for fair purposes into two classes: (1) All property previously acquired by the county for fair purposes, and (2) property of the exposition and fair, and that the property of the first class includes the pavilion building and is expressly placed under the custody and control of the county commissioners, and that it is only property of the second class, that is, property owned and belonging to the fair board of directors which may be leased or rented by such board. With this contention we cannot agree for the reason (1) the board of directors of the exposition and fair is not authorized to acquire title to any property, therefore, it would be without property to lease or rent, and (2) it is apparent from the section, as a whole, that the proviso relates back and is intended to apply to all property owned by the exposition and fair and to all property owned by the county used by the exposition and fair. If there be any ambiguity in said section 13 as to what property the Legislature intended to authorize the board of directors to lease or rent, that ambiguity has, since this action was commenced, been removed by the amendment thereof by section 4, Title 2, chapter 2, S. L. 1949, wherein said section is not changed down to the proviso, but the proviso is amended so as to read:

"Provided, however, that the Board of Directors of such Exposition and Fair shall have the right to lease or rent any of the property owned by the county for exposition and fair purposes, for any term not exceeding one (1) year, including all grounds, buildings and equipment of the Exposition and Fair,

for any purpose, and upon such terms as they deem proper, during such time as the same is not being used, or to be used, for Exposition and Fair purposes, . . . provided, further, that no such rental contract shall require the approval or other act of the Board of County Commissioners. . ."

It is there made clear that the Legislature intended to authorize the board of directors to lease or rent any of the property owned by the county for exposition and fair purposes. That was evidently the intention of the Legislature in the enactment of section 13, supra, in its original form.

It is next contended that if said section 13, as enacted in 1943, is to be construed as authorizing the fair board to make a lease which will take this pavilion building from the control and custody of the board of county commissioners for a term of years, then, to that extent, the section is unconstitutional, in that it would impair the obligation of a contract which came into existence between the county and taxpayers when the bonds were voted to construct the building for free fair purposes, the same to be owned and controlled by Tulsa county. The general rule is that the laws in effect pursuant to which bonds were voted become a part and are read into the contract between the state or municipality, as the case may be, and the bondholders, and that the Legislature may not later enact any legislation which would impair the obligation of such contract. Title 2, sec. 109, O. S. 1941 (S. L. 1929, chapter 26, sec. 1) authorized all counties in the state to issue bonds for the purpose of purchasing the lands, improving same and constructing buildings thereon for free fair purposes. Section 110 of the same title (sec. 2 of the 1929 Act) provides:

"The Board of County Commissioners in each county of the State of Oklahoma is hereby authorized and empowered to call an election for the purpose of issuing bonds to purchase lands, improve the same, and to construct buildings thereon for free fair purposes, the same to be owned and controlled by such counties."

That was the law under which the bonds were voted and the building was constructed. It required that the proposition to be submitted to the public for vote is whether bonds shall be issued for the purpose of purchasing lands, improving same and constructing buildings thereon to be owned and controlled by the county. Such was the proposition submitted to the voters of Tulsa county when the bonds were voted upon to provide funds for the construction of the building here involved. It did not require that such property should remain in the custody of the board of county commissioners. Section 13 of the 1943 Act, above referred to, does not in any way take or attempt to take away or authorize the taking away from the county the title or ownership of any of the property involved. Neither does it take away nor authorize the taking away from the county the custody and control of the property. It merely provides that custody and control with the power to lease or rent be in the board of directors of the exposition and fair, instead of in the board of county commissioners. The Constitution, art. 5, sec. 36, provides:

"The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

Thereunder, the Legislature is authorized to create the fair board and place the county-owned property in its custody, control and management.

It is next contended that the lease taking the custody and control of the pavilion building away from the board of county commissioners is against public policy, and for that reason is invalid. In Dixon v. Van Swearingen Co., 121 Ohio St. 56, 166 N. E. 887, it is said:

"Generally speaking whatever is not forbidden by statute, nor contrary to judicial decision, nor against the public health, morals, safety, or welfare, or the like, is not against public policy."

In 50 C. J. 858, it is said:

"The term (public policy) has been said to mean the law of the state as found declared in its Constitution, its statutory enactments and its judicial records. . . ."

The Legislature, under the Constitution, is authorized to and has declared the public policy of this state with reference to the care, custody and control of property owned by the state of several counties. Therefore, the lease here under consideration is not against public policy.

It is next contended that the lease for a five- year period is invalid in that it creates an obligation against future fiscal years for the payment of which no revenue and income is provided and is in violation of section 26, art. 10 of the Constitution, which provides:

"No county, city, town, township, school district, or other political corporation, or subdivision of the State, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, . . ."

Plaintiff asserts that because the lease provides that:

"Lessor agrees to keep said pavilion building in good state of repair insofar as the exterior of the building, or the plumbing therein, or any structural part of the building, is concerned, . . ."

and also requires that the lessor clean and disinfect the pavilion building after livestock has been kept therein, and necessarily entails or calls for the expenditure of county funds through a period of years and therefore creates an obligation or indebtedness in excess of or beyond the revenues provided for the year.

In this connection plaintiff cites City of McAlester et al. v. State ex rel. Board of Public Affairs, 195 Okla. 1, 154 P. 2d 579, together with the cases therein cited, namely: Zachary v. City of Wagoner, 146 Okla. 268, 292 P. 345; Protest of Reid, 160 Okla. 3, 15 P. 2d 995; and In re Bliss, 142 Okla. 1, 285 P. 73.

Those cases are distinguishable from the instant case. The city of McAlester, for example, was contracting with the State Board of Public Affairs to do something it was not required by law to do. The State Board of Affairs was not required by any law to construct a reservoir for the storing of water as a part of the water supply of the city of McAlester. Neither was the city of McAlester obligated or required by law to furnish water to the State Penitentiary. In the instant case, the board of directors of the exposition and fair was contracting to do only what the law clearly made it its duty to do. That is, keep the buildings in a fair state of repair. Section 10, Title 2, ch. 2, S. L. 1943 (House Bill No. 97) authorized the board of directors of the exposition and fair to charge and collect certain admission fees and other fees, and provided:

"All fees and charges herein authorized to be collected shall be used for the operating and conducting of such Exposition and Fair and maintenance and repair of the buildings and upkeep of the grounds, and such other general expenses of the Exposition and Fair as the Board of Directors may direct."

Section 12 of the Act makes it the mandatory duty of the board of county commissioners to include in the estimate of the needs of the county each fiscal year a sum not less than $25,000, unless a lesser sum is requested by the board of directors, to be used by said board of directors in the payment of premiums, salaries and other expenses incurred in the management,

operation and conducting such exposition and fair, including, among other things, the maintenance of buildings and the upkeep of grounds. Therefore, the obligation with reference to maintenance of the building contained in the lease was not one voluntarily assumed in the lease contract but was an obligation already imposed by law. The distinction is stated in Hume v. Wyand et al., 68 Okla. 261, 173 P. 813, and in Liberty National Bank v. County Excise Board of Jefferson County, 175 Okla. 245, 52 P. 2d 51.

In Hume v. Wyand, supra, it was held:

"Constitutional provisions, such as section 26, art. 10, Williams' Constitution, do not apply to those liabilities which are not voluntarily incurred, but are imposed upon the municipality by the sovereign power, as expressed in the Constitution and the valid acts of the Legislature."

In Liberty National Bank v. County Excise Board of Jefferson County, it was held:

"Section 26, art. 10, Oklahoma Constitution, does not apply to those liabilities which are not voluntarily incurred, but are imposed upon the municipality by the sovereign power, as expressed in the Constitution and the valid acts of the Legislature."

The rule there stated would seem to be a complete answer to the contention here made, but there is another reason why the contention of plaintiff is not tenable. The lease of itself does not create any debt or obligation for repair or disinfection. As pointed out in City of Tulsa v. Langley, 196 Okla. 680, 168 P. 2d 116:

". . . Generally speaking a debt is created when a contract or agreement is made (Faught v. City of Sapulpa); but this is not always true. Sometimes the terms of the agreement are such that a municipality does not become indebted until the happening of some contingency, as, for instance, the delivery of material or the performance of services, although in a sense an essential prerequisite of such indebtedness lies in the agreement under which the services are performed or material furnished."

Such is the situation under the lease contract here involved. The fair board agreed to keep the pavilion building in repair as far as the exterior thereof and the plumbing therein are concerned. But it did not become indebted therefor and could not be indebted therefor until some material or services necessary in the making of the repair had been furnished. If and when that happened, whether or not the indebtedness thus incurred would be in excess of the revenue provided for the year in which the repairs were made would depend upon the state of the fund at the time the repairs were made.

There is nothing in the evidence to show that any repairs were ever made or contracted for in excess of the income provided for the year in which the same were made.

It is next contended that the lease is invalid because it permits material alteration of county-owned property. This contention is based upon the provision in the lease which permits the installation of removable wooden skating rink floor in the building. The contention is entirely without merit. No permanent alteration in the building is authorized or shown. The floor referred to is built in sections and is easily removable, and the evidence shows that it was in all cases, when requested, removed by the lessees while the building was being used for exposition and fair purposes.

Finally, it is contended that it was error of the trial court to permit the Fair Board to intervene herein. The contention is likewise without merit. The board of directors is a separate entity created by the 1943 Act and the management and operation of the fair is vested in said board. It was given power and authority to lease the building owned by the county and used for exposition and fair purposes. It had

full right to be heard concerning its authority to make the lease. Examination of the record as a whole discloses nothing which calls for the cancellation of the lease.

Judgment affirmed.

DAVISON, C. J., ARNOLD, V. C. J., and WELCH, CORN, LUTTRELL, HALLEY, and JOHNSON, JJ., concur.