**T. V. WOODWARD, Plaintiff in Error,**

v.

**CITY OF ANADARKO, a Municipal Corporation, Kay Clark, Mayor, and Warren L. Harrison, R. L. Brooks, W. T. McKesson, Sam Thompson, Lee Garrett, and J. A. McAdoo, City Councilmen of the City of Anadarko, Oklahoma, Kay Clark, Warren L. Harrison, R. L. Brooks, W. T. McKesson, Sam Thompson, Lee Garrett and J. A. McAdoo, Individually and as Trustees for the Anadarko Public Works Authority, Stewart & Stevenson Services, Inc., a Corporation, and Chicago Pneumatic Tool Company, a Corporation, Defendants in Error.**

No. 38806.

Supreme Court of Oklahoma.

April 5, 1960.

Rehearing Denied April 15, 1960.

Barney & Pain, Leslie Pain, Anadarko, for plaintiff in error.

Haskel B. Pugh, Anadarko, Leon S. Hirsh, Oklahoma City, for defendants in error, City of Anadarko, Its Mayor, Councilmen, Trust and Trustees.

Stagner, Alpern, Powers & Tapp, by LeRoy Powers, Oklahoma City, for defendants in error, Stewart & Stevenson Services, Inc., and Chicago Pneumatic Tool Co.

George W. Miller, Ponca City, Carl A. Rizley, Sayre, Walter J. Arnote, McAlester, for the Oklahoma Association of Municipal Attorneys amicus curiae.

WELCH, Justice.

The City of Anadarko owned and operated an electric power and distributing system for many years. The governing body of said City apparently concluded in 1958 that substantial changes, improvements and extensions to said system were necessary. In November, 1958, several questions or propositions were submitted to the citizens of Anadarko at a special city election called for such purpose. All but one of said questions contemplated financing certain city improvements through the issuance and sale of city bonds by Anadarko to be paid by ad valorem taxes. One of the matters submitted was whether Anadarko's governing body should

"accept a beneficial interest of a public trust to be created under Title 60, Sec. 176–180, O.S.A.1951, as Amended * * * to be known as The Anadarko Public Works Authority, with the persons who are incumbent members of the governing body of the City, *ex officio* as Trustees for purposes including the furnishing of electricity in the said City and immediate vicinity, and thereafter the said City to lease its present municipal electric system to said Authority in order that it may be enabled to issue Revenue Bonds (for which the said City and its taxpayers shall be in no way liable) to defray the cost of making replacements and related improvements to the existing municipal electric system and for incidental expenses, said Revenue Bonds to be in the approximate amount of $650,000.00. the principal, interest and payments related to the servicing and securing of said Bonds to be payable solely out of the net revenues of the Authority from operation of the properties leased from the said City after payment by the Authority of all cost of operation and maintenance of such properties and said Authority further will be obligated periodically to pay all of its net revenues remaining after the foregoing payments to the City?"

This matter or proposal carried by a vote of 723 to 613. The other matters or proposals to vote city bonds all failed to carry.

On December 29, 1958, following that election, the Trust Indenture in controversy was executed by Anadarko's governing body which consisted of its Mayor and Councilmen.

It was provided, in substance, in said Indenture that a Trust was created under the statutes above cited; that the name of the Trust should be "The Anadarko Public Works Authority;" that the purpose of the Trust was to furnish electric utility service to the inhabitants of Anadarko and "territory in reasonable convenient proximity thereto;" that Trust should fix and collect charges for said service; that Trust shall acquire, lease and operate all properties necessary in operating the utility and provide and expend funds for said purpose; that the duration of the Trust should be for a period necessary to carry out the objects and purpose of the Trust; that the Trust Estate would consist of funds in the hands of the trustees or donated to them and all property coming into their hands; that the Trustees would administer the

Trust for the benefit of the beneficiary thereof; that the Trustees would be members of Anadarko's governing body; that the City Manager should be employed as general manager of the Trust; that it could be provided in any contract involving any funded debt that the Trustees could, in event of default on such a debt, be replaced by temporary Trustees; that the Trustees were to have all power and authority necessarily incident to operating the utility, but that "the Trustees shall not contract any indebtedness or obligation whatsoever which shall be secured by the Trust Estate or its net reserve, until first they shall have been submitted to all of the qualified electors of the City of Anadarko" at an advisory election; that Trustees should hold title to all of properties of the Trust and should employ necessary agents and servants; that provisions of Anadarko's charter requiring that certain purchases be made upon bids would apply; that Trust should bring necessary actions; that the Trustees should designate the principal officers of the Trust and that the beneficiary of the Trust was the City of Anadarko or its successor.

On said December 29, 1958, Anadarko's governing body passed ordinances accepting the beneficial interest of the Trust and leasing Anadarko's electric power and distributing system to Trust. The agreed rental was $100 a year. The period of the lease was fifty years from date with option to renew.

On the same date that the Trust Indenture and lease were executed, Anadarko's governing body adopted a resolution with emergency attached by the provisions of which the provisions of said Indenture and lease were adopted and ratified.

Anadarko's electric power and distributing service has been operated by Trust since December 30, 1958. Receipts for a three-month period that Trust operated said service were shown to be $35,212.45. Of this amount $15,000 was distributed to Anadarko and the balance was retained by Trust to cover expense and maintenance and bond debt service.

In 1959 Trust issued and apparently sold bonds in the principal amount of $650,000. The purpose in issuing and selling the bonds was to enlarge and improve the generating plant. The validity of the bond issue and of the improvement contract is questioned by plaintiff.

Upon trial the plaintiff attacked the Trust itself, the lease contract, the issuance and sale of revenue bonds, the construction contract, and acts generally of the Trustees, claiming all to be illegal. The defendants contended the opposite in each instance.

Following trial of case to the court, the court found and held in favor of defendants and against plaintiff on all issues.

There was much documentary evidence and some oral testimony with little, if any, factual dispute. The trial court made extensive detailed findings of fact in twenty numbered paragraphs. It is interesting to here note a condensed version of such findings by numbered paragraphs wherein the court found as follows:

1. In December, 1958, at proper election the city voters approved (a) the creation of a trust under applicable law, with the City of Anadarko as beneficiary and the Mayor and City Councilmen ex officio as trustees, for purposes including the furnishing of electricity in the city, (b) the leasing of the city's existing municipal electric system to said trust in order that it might issue revenue bonds and make improvements, etc., (c) said trust to issue $650,000 principal amount of such revenue bonds, for which the city and its taxpayers should be in no way liable, but payable solely out of the net revenues from operation of the leased property after payment by the trust of all costs of operation and maintenance, and (d) for the trust thereafter periodically to pay all of the remaining net profits of operation of the leased property to the city.

2. In compliance with such election later in December, 1958, the defendants, Mayor, and Councilmen, but acting in their individual capacities as private citizens, subscribed a Declaration of Trust for the creation of

the Trust to be designated as "The Anadarko Public Works Authority."

3. The Declaration provided that the purpose of said trust should include the furnishing of electricity to the citizens and residents of the city, furnishing the required funds, also furnishing funds to the city for its general fund purposes, providing for qualification of the trustees, except as to specified sum for repairs and replacements it was provided that any indebtedness should be approved by a majority of the qualified electors of the city voting at an advisory election called for such purpose; all purchases and contracts to be let on bid and fully protecting the city from any liability for actions of the trust.

4. The city by appropriate ordinance accepted beneficial interest of the trust, leased the municipal system to the trustees, and all documents properly endorsed were filed for record in the office of the county clerk.

5. That defendants acted in all these matters in good faith pursuant to the result of the election, and "there is no evidence whatever of sham or subterfuge to evade the Constitution and Statutes of Oklahoma, or the City Charter of the City of Anadarko, in said actions."

6. The purposes of said trust are for general public welfare and for the furtherance, and providing of funds for the furtherance of proper public functions of the beneficiary City of Anadarko.

7. The trust estate consisted of the leasehold estate, and since January 1, 1959, the trustees have operated and maintained the leased property without cost to the city, and have made regular distributions of money to the city for its general fund purposes.

8. There is no conflict in interest between the trust and the City and that elected city officials are entitled to be trustees, and it is for the best interests of the City and the public.

9. In paragraphs 9, 10, 11 and 12, the court found and set out the details by which the trustees made a valid and legal sale of $650,000 revenue bonds payable from revenues which the court found should be in all things approved.

13. In paragraphs 13, 14, 15, 16 and 17 and 18 the trial court found that the trustees had employed engineers to prepare plans and specifications for improvements which had been approved, the trustees caused advertisements for bids for the proposed work, and approved the bid of Stewart & Stevenson Services, Inc., that the bid was fair and reasonable and should be approved by the court, that at all times the trust acted honestly and in good faith and in the best interest of the beneficiaries of the trust and their acts should be in all things approved and confirmed.

19. "All official actions of the Trustees have been recorded in writing and submitted to the court; and all such official actions have been taken by the Trustees publicly and without concealment. The plaintiff has failed to establish any bad faith, concealment, bad judgment or other breach of duty on the part of the Trustees or any facts which would support the allegations of his petition in such regard. For the court to interfere in the administration of the trust as it has been administered by the Trustees would be without benefit to the trust and *determinetal* to the best interests of the trust."

20. "By reason of the foregoing, the administration of the trust by the Trustees has been proper in all respects and should be approved."

 The trial court then made conclusions of law in seventeen paragraphs as follows:

"1. The plaintiff is entitled to maintain this action under the provisions of Title 60, Oklahoma Statutes 1951, sections 175.23, and 176–180, inclusive.

"2. Under the pleadings of the parties, the Court has jurisdiction to make all of the determinations provided in Title 60, Oklahoma Statutes, 1951, section 175.23, and to supervise the administration of the trust as provided in said section.

"3. The trust known as 'The Anadarko Public Works Authority' was legally created and is a valid trust under the law of Oklahoma with the City of Anadarko as beneficiary; and conforms to the expressed will of a majority of the qualified electors of the City of Anadarko.

"4. The lease from the City of Anadarko to the Trustees of the said trust, of the existing electric facilities of the City, is for purposes authorized by law and is a valid lease of said properties.

"5. The trustees of said trust are an agency of the State of Oklahoma and regularly constituted authorities of the beneficiary City of Anadarko for the performance of the purposes set forth in the instrument creating said trust.

"6. The fact that the trustees of said trust also are members of the governing body of the City of Anadarko in law does not effect a merger of the estates of the trust or create any conflict of interest or duties.

"7. The trustees of said trust, as an agency of the State and regular constituted authorities of the City of Anadarko, are not required to procure a franchise from the City of Anadarko for operation of the leased electric system.

"8. The provisions of the trust instrument do not conflict with any provision of the City Charter of the City of Anadarko.

"9. The trustees of said trust may incur indebtedness in the manner provided in the trust instrument and such indebtedness in no manner is, or shall be a charge against the City of Anadarko or any of its estate in any property.

"10. The indebtedness proposed to be incurred by the trustees to wit, $650,000. principal amount of revenue bonds secured solely by the leasehold estate and its net revenues will not create an indebtedness of a nature prohibited by the Constitution of Oklahoma.

"11. No tax may be levied to pay any indebtedness incurred by the trustees of said trust and, therefore, there is no reason in law why elections to authorize such indebtedness should be limited to the approval of taxpaying electors instead of all of the qualified electors of the City.

"12. The underwriting contract providing for the sale of the revenue bonds of the trust to R. J. Edwards, Inc., with the terms and conditions of the transaction as negotiated by the Trustees, is a valid contract and is not forbidden by the provisions of the trust instrument or by law.

"13. The Trustees complied with all requirements of the City Charter of the City of Anadarko in calling for bids for construction and installation of the improvements and additions to the leased electric facilities.

"14. The question of whether or not proposals for the construction and installation of the improvements to the leased facilities were in substantial conformity to advertised plans and specifications and will accomplish the purposes intended is one of the facts to be determined from the evidence.

"15. A court of equity has a general superintending control over trusts and their administration and may determine whether the actions of the trustees in administration of the trust are in the best interests of the beneficiary; but in the absence of evidence of fraud, collusion or palpable abuse of discretion on the part of the trustees, the court should not substitute its judgment for the honestly exercised judgment of the trustees.

"16. The determination by the trustees of said trust, as to which proposal, for construction and installation of improvements to the leased property was in substantial conformity to the advertised plans and specifications, and

best would accomplish the purposes intended at the best bargain for the trust is one within the discretion of the trustees, based upon an honest exercise of their judgment, and the Court should not interfere with such exercise of discretion in the absence of evidence of fraud, collusion or palpable abuse of discretion.

"17. When all of the actions relating to the administration of a trust by its trustees have been presented to the Court and all facts relating thereto have been examined by the court, and said actions found by the court to have been for the best interests of the trust, the court should order the actions of the trustees to be approved and direct them to carry out all contracts and proceedings so made and instituted by them."

Judgment was then entered for the defendants on these findings of fact and conclusions of law, and the relief prayed for by plaintiff was denied.

On appeal this case was argued at the same time as the case of Meder v. City of Oklahoma City, Okl., 350 P.2d 916. In that case we considered a trust, trust indenture, bond indenture and lease agreement somewhat similar to those involved herein. In that case we upheld the trust and the proceedings of the parties, or we declined to enjoin the proceedings under the lease contract or agreement, the bond indenture and trust indenture.

Several questions raised in this case as to the validity of the lease agreement, bond indenture and trust indenture were also presented in the Meder case and there decided. We deem it unnecessary to repeat and to discuss those same questions or contentions here, since we have concluded that the judgment here appealed from should be affirmed, and since we adhere to our decision in Meder, supra.

Plaintiff contends that the election of December 9, 1958, was of no effect to authorize a Trust, and was not conducted properly. It is here contended that multiple propositions were included under a single question presented to the voters. We do not agree, but find that on the contrary the proposition was submitted in considerable detail as to the creation of the Trust, leasing of the electric system, issuance of bonds for extensions and repairs, etc. We conclude that only one proposition was submitted, and that the trial court's treatment of this contention in findings of fact 1 and 2 were correct. That if the election did not authorize and give added value and validity to the creation of this Trust, the election certainly did not detract any from the validity of the Trust. We have held that similar trusts could be legally created and be valid without any vote of the people. Board of County Commissioners of Tulsa County v. Mullins, 202 Okl. 628, 217 P.2d 835; Morris v. City of Oklahoma City, Okl., 299 P.2d 131, and Meder v. City of Oklahoma City, Okl., 350 P.2d 916. We find no merit in this contention.

Plaintiff also contends that this Trust is invalid because the individual defendants who signed the Declaration of Trust were officials of City, and, because the same persons are Trustees and officials of City, a merger of estates and a conflict of interests is created.

The trial court dealt with these contentions in Findings of Fact No. 8, and Conclusions of Law No. 3, 5 and 6, where this contention was effectively denied. We are not presented with either authorities or convincing argument that there is any illegality by reason of the fact that these men act as officials of the City and also act as Trustees of this Trust in the operation of the electric plant. We think it is demonstrated that the trial court was correct in its conclusion that this detail of the trust arrangement was for the best interest of City and was legal.

Plaintiff next contends that the Declaration of Trust conflicts in some details with the city charter. The trial court found and held specifically that "the provisions of the trust instrument do not conflict with any provision of the city charter of the City

of Anadarko." Upon examination we agree with that conclusion.

Plaintiff further contends that the contract for sale of the bonds here involved was invalid. The trial court dealt with this contention in findings of fact No. 9, 10, 11 and 12, and in conclusions of law No. 12. The trial court found and set out in great detail the manner in which the bond sale was made, demonstrating that the sale was for the best interest of City, and was a more advantageous sale than was offered or would be offered by others; that all parties acted creditably and in good faith, and that the sale was made in a legal manner and in compliance with the terms and provisions of the documents here involved. We agree.

The plaintiff finally contends that:

"The contract for purchase and construction of plant building and machinery was not based upon specifications and competitive bidding and is void."

The trial court dealt with this contention in findings of fact No. 13 to 18 both inclusive, and in conclusions of law No. 13, 14, 15 and 16. The court found and stated the details of the acts by which the contract was based upon specifications and proper bids, and by finding of fact No. 19 and conclusions of law No. 17, the court approved all those acts of the Trustees, and with that conclusion we agree, deeming it unnecessary to here set out the details by which the Trustees made a fair and legal and valid contract covering this construction.

The plaintiff makes a general statement which would seem to question the fact findings made by the trial court, but an examination of the record demonstrates that such findings of the trial court are in no instance unsupported by the evidence or contrary to the weight of the evidence, therefore, the findings of fact merit the approval of this court. That is also true as to the conclusions of law made by the trial court. Such findings and conclusions are approved.

The judgment appealed from is affirmed.

DAVISON, C. J., and HALLEY, JOHNSON and JACKSON, JJ., concur.

WILLIAMS, V. C. J., and BLACKBIRD and IRWIN, JJ., dissent.

BERRY, J., concurring specially.

BERRY, Justice. (specially concurring).

After this action was filed in this Court, the Trust Indenture and lease were amended so as to provide in substance that the franchise and lease granted Trust should be for a term of 25 years; (2) That the City of Anadarko by accepting the Trust Indenture did not surrender any of its sovereign governmental powers, therefore, that said City did not surrender, and to the contrary, reserved power and authority to fix the rates charged by Trust for electric service. The Indenture as amended was accepted by Anadarko's governing body.

I am of the opinion that it was within the province of the Trust, which is a legal entity separate and distinct from the City of Anadarko, to amend its Trust Indenture and that it was within the power of the City of Anadarko to accept the Indenture as amended.

I am also of the opinion that the Trust Indenture, prior to the referred-to amendments thereof, violated Art. 18, Sections 5(a) and 7 of the Okla.Const. (State ex rel. Williamson v. Garrison, Okl., 348 P.2d 859) but as amended said Indenture did not violate said constitutional provisions.

I am of the further opinion that the provisions of 60 O.S.Supp.1953 § 176, relative to a city or town beneficiary of a public trust leasing its property to such a Trust is a special statute applicable to cases such as the one before us, and for said reason it was unnecessary for the City of Anadarko to submit to its electors the matter of leasing its utility property to Trust.

As reflected by the majority opinion herein, a majority of the electors of the City of Anadarko voted to grant a franchise to Trust.