KIOWA INDIAN TRIBE, et al., Plaintiffs,

v.

CITY OF LAWTON, Defendant.

No. CIV–85–2252–A.

United States District Court, W.D. Oklahoma.

Oct. 31, 1986.

W. Rogers Abbott, Oklahoma City, Okl., Glen M. Feldman, O'Connor, Cavanagh, Anderson, Westover, Killingsworth, & Beshears, Phoenix, Ariz., for plaintiffs.

Gerald S. Rakes, Asst. City Atty., Lawton, Okl., David M. Curtis, Lawton, Okl., for defendant.

## ORDER

ALLEY, District Judge.

This case is before the Court for consideration of the parties' cross motions for summary judgment.

The plaintiffs, the Kiowa, Comanche, and Apache Tribes of Oklahoma, individually and as represented through their Intertribal Land Use Committee (the Tribes), seek a declaratory judgment that, under the terms of a 1926 deed conveying land from the United States Government to the defendant, the City of Lawton, Oklahoma (the City), the City is obliged to provide free

water service for the domestic use of the Fort Sill Indian School (the School) as long as federally funded programs are operated there. The Tribes also seek a permanent injunction to prohibit the City from shutting off water service so long as federally funded programs are operated at the School.[1] The City responds by arguing that conditions at the School have changed to such an extent since 1926 that it is no longer obligated to provide free water to the facility. In addition, the City alleges that the 1926 deed violates Article 10, Section 26 of the Oklahoma Constitution, and so for this reason as well it is not obligated to provide free water service to the School. Finally, the City has filed a cross complaint against the Tribes seeking payment for water service provided to the School from April, 1984 through August, 1985 and a declaratory judgment that the Tribes are obligated to pay for water service in the future. The parties have filed a stipulation of facts to be used in consideration of their motions.

(i)

Under the deed at issue, dated January 11, 1926, the United States Government conveyed 270 acres of Kiowa, Comanche, and Apache reservation land in Comanche County to the City in exchange for $2,880 in cash and the City's promise:

> to furnish a sufficient supply of water for the domestic use of the Ft. Sill Indian Boarding School and the Kiowa Indian Hospital, for so long as they are maintained as Government Institutions, without cost to the Government.

For some 59 years, the City provided water service to both the School and the Hospital. Then, on August 27, 1985, the Lawton City Council adopted a resolution declaring that the City would begin charging the Tribes for water service provided to the School.

The City Council reasoned that the School was no longer "maintained as a Government Institution." In September of 1980, it ceased to operate as a Bureau of Indian Affairs boarding school. Under the terms of a preliminary injunction from the United States District Court for the District of Columbia, the Bureau of Indian Affairs maintained guard services, maintenance personnel and utility services at the School facility until July, 1983. In September of 1983, the Tribes assumed possession of the facility. Sometime thereafter, the Intertribal Land Use Committee began to operate non-governmental programs, including bingo games open to the public, on the School premises.

The City argues that these changes have extinguished its duty to provide the free water. According to the City, the water service provision of the 1926 deed was intended to benefit a specific institution rather than a set of buildings. The City thus alleges that its duty ended when the School ceased to function as it had in the past. In the alternative, the City argues that it is still not obligated to provide free water to the buildings in which the Boarding School was located even if the words "Government Institution" in the 1926 deed are construed to include successors to the School doing different types of activities. According to the City, this is because the use of School's premises for recreational activities (particularly bingo games) is inconsistent with "Government Institution" status.

Two federally funded programs are currently operated at the School facility. The first is a residential alcohol rehabilitation program funded through the Indian Health Service of the United States Department of Health and Human Services. The Indian Health Service provided $197,775 to this program in fiscal year 1985, for treatment of 119 men. The second is a program funded under the Johnson-O'Malley Act, 25 U.S.C.A. § 452–457, providing supplemental educational services to 591 Indian students enrolled in the Lawton public

---

**1.** The Tribes' request for a declaratory judgment that the City is without lawful authority to impose or collect a "refuse service availability" charge with respect to the School unless the City is actually picking up refuse from the School has been resolved by means of a partial settlement approved by the Court on December 16, 1985.

schools.[2] The Bureau of Indian Affairs provided $70,920 to this program in fiscal year 1985.

According to the Tribes, the use of the general term "Government Institution" in the deed indicates that the intent of the parties was to insure that the buildings housing the School would be provided with water without charge to the United States Government so long as federally funded programs were maintained there.

The case thus turns on the interpretation of the 1926 deed between the United States Government and the City. The Court must first decide whether the City's promise to provide water service without charging the government was intended to benefit government programs operated at the facilities formerly used by the School. In addition, if the Court finds that the parties to the deed did intend the City's promise to benefit governmental programs other than the original boarding school, the Court must decide whether, as it is currently used, the School constitutes a "Government Institution."

In interpreting the terms of the deed, the Court must apply several rules of construction. Most generally, under Oklahoma law, a deed is to be interpreted in the same manner as other written contracts. *Herron v. Rozelle*, 480 F.2d 282 (10th Cir.1973). Moreover, the cardinal consideration in the construction of contracts is the intent of the parties. *Paterson v. Southwestern Bell Telephone Co.*, 411 F.Supp. 79 (E.D. Okla.1976). This intent is to be ascertained, if possible, from the entire instrument. *Panhandle Eastern Pipeline Co. v. Isaacson*, 255 F.2d 669 (10th Cir.1958). In cases of ambiguity, that interpretation which will give effect to all of the instrument's provision is to be favored. *In re Public Leasing Corp.*, 488 F.2d 1369, 1378 (10th Cir.1973).

On its face, the water service provision of the 1926 deed is susceptible of more than one reasonable interpretation. The term "Ft. Sill Indian Boarding School" could refer to either the institution or to the buildings in which its institutional functions were carried out. *See* Webster's Third International Dictionary.

Other portions of the deed do offer some assistance in interpreting the City's promise. The deed explicitly states that the sale of land conveyed is authorized "by the Act of Congress approved on June 30, 1913." That enactment authorized the Secretary of the Interior to:

> sell upon such terms and under such rules and regulations as he may prescribe the unused, unalloted, unreserved and such portions of the school and agency lands that are no longer needed for administrative purposes, in the Kiowa, Comanche, Apache, and Wichita Tribes of Indians in Oklahoma, the proceeds therefrom, less $1.25 per acre, to be deposited to the credit of said Indians in the United States Treasury, to draw until further provided by Congress four percentum interest, and to be known as the Kiowa Agency hospital fund, to be used only for maintenance of said hospital.

This language persuades the Court that the conveyance from the United States Government to the City of Lawton was not an arms-length business transaction intended to benefit only the grantor and grantee. The conveyance was also intended to benefit those using the Kiowa Indian Hospital, including the Tribes. The $2,880 sum that the United States Government received as part of the consideration for conveying land to the City was, under the terms of the Act, to benefit the Tribes directly; it was to be deposited in the Kiowa Agency hospital fund. The water service provided to the School and the Kiowa Indian Hospital without charge to the United States Government was also to benefit the Tribes. Funds the United States Government would have had to spend for water service

---

**2.** The Johnson-O'Malley Act authorizes the Secretary of the Interior to enter into contracts that provide medical, educational, and social welfare services, as well as agricultural assistance, to Indians and to expend under these contracts the funds appropriated by Congress for these purposes.

could instead be spent more directly on medical and educational programs. This freeing of government funds occurs whether or not there is a boarding school at the Ft. Sill facility. As long as there is a United States Government institution there and so long as that institution does not have to pay for water service, the money saved by the institution can be spent to benefit the Tribes in other ways.[3]

Thus, when the water service provision of the 1926 deed is read in relation to the 1913 Act, it becomes apparent that "Ft. Sill Indian Boarding School" does not refer only to the educational institution that was closed in September of 1980. The purpose of the provision is to free funds from other obligations for medical and educational programs, and that purpose can still be served despite the fact that there is now no boarding school at Ft. Sill. Moreover, had the parties to the deed intended to limit the benefits of the water service provision to the boarding school, they could have used the phrase, "for so long as the Ft. Sill Indian Boarding School is maintained as a boarding school". Instead, they used the more general term, "Government Institution." Accordingly, the Court concludes that the closing of the Ft. Sill Indian Boarding School in September of 1980 did not extinguish the City's duty under the 1926 deed to provide water service to the School's buildings without charge to the United States Government.

The question remains whether the School is still "maintained as a Government Institution." As noted above, the joint stipulation of facts lists three programs that currently use the School's facilities: a residential alcohol rehabilitation program (federally funded), a Johnson-O'Malley educational program rendering supplemental educational services to Indian students in the Lawton public schools (also federally funded), and "non-governmental programs, including bingo games, which are open to the public." Which use is primary?

The City's argument is that the conduct of recreational programs on the School's facilities renders it primarily non-governmental. Why does this follow? As the Tribes observe, the School has always run many programs open to the public and tried to accommodate requests for use of the facilities whenever possible. Affidavit of Milburn "Steve" Littelman. The City's position is necessarily founded on a change of circumstances and in this respect no significant change occurred.

In contrast, the Tribes' position is supported by the record. Both the alcohol rehabilitation program and the Johnson-O'Malley educational program operated at the School's facilities serve important governmental objectives. *See, e.g.,* 25 U.S.C.A. § 1602 and 25 U.S.C.A. § 450a. Considerable government funds have been expended on both programs. Stipulation of Facts, paragraph 6; affidavit of Jerome DeWolfe; affidavit of Wallace Allen, Jr. Moreover, the fact that the Tribes' Intertribal Land Use Committee can determine the way in which the School's land is used does not make the School a non-governmental institution, for, as the Tribes observe, the Committee is subject to federal supervision.[4] *See, e.g.,* 25 U.S.C.A. § 415 (stating that leases of Indian land must be approved by the Secretary of the Interior). Indeed, what the Committee might do with the

---

**3.** In fact, the Tribes have submitted affidavits of officials from both federal programs operated at the School. These aver that if these programs were required to pay for water service, the amount of money spent on both educational services and patient care would be reduced.

**4.** In its reply brief, the City argues that the land on which the School is located is no longer held in trust for the Tribes by the United States Government. The City refers to Public Land Order 5361, dated May 6, 1981, which restored the land on which the School is located to tribal ownership. However, lands held under tribal ownership are nevertheless held in trust by the United States Government for the use of the Indians. *Cherokee Nation or Tribe of Indians v. State of Oklahoma,* 416 F.Supp. 838 (E.D.Okla. 1976). As a result, Public Land Order 5361 does not extinguish the United States Government's supervisory powers over the land on which the School is located.

School land in the future is not determinative of what the School facility is now.[5]

In conclusion, the phrase in the 1926 deed "for so long as the Ft. Sill Indian Boarding School is maintained as a Government Institution" is, on its face, capable of more than one reasonable interpretation. Upon reading the phrase in relation to the Act of 1913 and upon considering the significance and scope of the federal programs now operated at the School's facilities, the Court concludes that, under the terms of the deed, the Ft. Sill Indian Boarding School is still "maintained as a Government Institution." [6]

(ii)

The City also alleges that its promise in the 1926 deed to provide water without charge to the School violates Article 10, Section 26 of the Oklahoma Constitution. That Section prevents cities, counties, school districts, and other political subdivisions from becoming indebted in any manner or for any purpose "to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election held for that purpose." The City argues that, it committed more funds, in the form of resources that would be used to supply water to the School in the future, than were on hand at the time the deed was executed. The reason is that the commitment to supply water was for an indefinite future. Accordingly, the City urges this Court to find that the City's promise to provide free water to the School is void.[7]

The City bases its argument on the Oklahoma Supreme Court's decision in *City of McAlester v. State*, 195 Okl. 1, 154 P.2d 579 (1944). In that case, the court held that the City of McAlester's promise to provide water to the state penitentiary at a set price, in exchange for the State Board of Public Affairs' promise to provide the labor necessary to build a part of the City's water system, violated Article 10, Section 26. The court reasoned that McAlester's promise to supply water entailed a committment of funds not yet in existence.

A later case, however, has qualified the ruling in *McAlester*. In *Board of County Commissioners of Tulsa County v. Mullins*, 202 Okl. 628, 217 P.2d 835 (1950), the Supreme Court of Oklahoma held that a

5. In the alternative, the Tribes argue that, if the entire School facility is not provided with free water service, at least the federally funded programs should be so provided. The City responds that such apportionment is physically and fiscally impossible, would cost the Tribes $90,000, and would create "a virtual nightmare of accountability and protracted litigation." Given these difficulties and the fact that the 1926 deed refers to the Ft. Sill Indian Boarding School as a whole, the Court concludes that an attempt to distinguish between the federally funded programs and other programs operated at the School is not justified. The question to be decided is whether, in its present form, the School facility as a whole constitutes a "Government Institution."

6. One issue not raised by the parties concerns the fact that the City seeks to charge the Tribes rather than the United States Government for the cost of supplying water to the School's facilities. Since the deed states that water is to be provided "without cost to the Government" (i.e. the United States Government, the grantor), it could be argued that the City's demand for payment from the Tribes does not violate the terms of the deed since the United States Government is not charged. However, the Tribes have implied that any charges imposed on them would in turn be imposed on the federal programs using the School's facilities. *See* Affidavits of Jerome DeWolfe and Wallace Allen, Jr. In this case, the City's demand for payment from the Tribes would ultimately result in the United States' paying for the water. The City has not denied that this would occur.

7. The City's argument is based on the assumption that the provisions of the 1926 deed are severable. Query whether this assumption is supported by the record. Under Oklahoma law, a severable contract is "one whose performance is divided into different, differentiated, and distinct groups wherein each separate performance forms the agreed exchange for that portion of the contract." *Holden v. DuBois*, 665 P.2d 1175, 1177 (Okla.1983). In this instance, the consideration furnished by the City (a sum of $2,880 and its promise to provide free water to the School and the Kiowa Indian Hospital) was offered in exchange for a single tract of land. There is no indication that water services were offered in exchange for one part of the tract while the $2,880 sum was offered in exchange for another part.

five year lease granted by the Tulsa County Fair Board did not violate Article 10, Section 26 despite the fact that the lease contained a provision that the Fair Board was to repair and clean certain parts of the building over the entire term of the lease. The court reasoned that, despite the fact that the lease involved a committment of future resources, no evidence that the promised repairs would actually cause the County to become indebted had been presented:

> The Fair Board agreed to keep the pavilion building in repair.... But it did not become indebted therefore and could not become indebted therefore until some material or service necessary in making the repair had been furnished. If and when that happened, whether or not the indebtedness thus incurred would be in excess of the revenue provided for the year in which the reports were made would depend upon the state of the fund at the time the repairs were made.

> There is nothing in the evidence to show that any repairs were made or contracted for in excess of the income provided for the year in which the same were made. 217 P.2d at 842.

The same is true in the case at bar. Just as in *Tulsa County,* the record contains no evidence that the cost of supplying water to the School in any particular year impaired the City's finances in that year. Without such evidence, the City's argument that the water service provision of the 1926 deed is void is without support. The Court concludes that the water service provision of the 1926 deed did not violate Article 10, Section 26 of the Oklahoma Constitution.

For the reasons stated above, the Court declares that the defendant, the City of Lawton, is obligated under the deed of July 11, 1926 to continue to provide free water service to the facilities at the Ft. Sill Indian School as long as those facilities continue to be used in their current manner.[8] In addition, the defendant, the City of Lawton is permanently enjoined from shutting off water service to the Ft. Sill Indian School so long as the School's facilities are used in their current manner. As the City is obligated to provide water service without charge, its cross complaint is denied.

---

8. The Tribes have requested this Court to enter a declaratory judgment stating that the City is obligated "to continue to provide free water service for the domestic use of the Ft. Sill Indian School as long as federally funded programs are being operated at the facility." However, throughout this case, the Tribes have based their argument on the specific uses to which school facilities are currently put (the two federally funded programs and the recreational programs) rather than on the existence of a single federal program at the School. Accordingly, the Court's declaration that, under the 1926 deed, the Ft. Sill Indian Boarding School is still maintained as a "Government Institution" applies as long as the School is used in the manner described in the record.