In re FORT COBB, OKLAHOMA, IRRIGATION FUEL AUTHORITY, Petitioner.

No. BK–76–679–E.

United States District Court, W. D. Oklahoma.

March 27, 1979.

Andrew J. Haswell, Jr., P.C., Oklahoma City, Okl., for petitioner.

Anthony V. Ponzio of Securities and Exchange Commission, Chicago, Ill., for SEC.

Larry W. Burks and Paul B. Benham, III, of Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., James D. Fellers and Paul W. Dudman of Fellers, Snider, Blankenship & Bailey, Oklahoma City, Okl., for T. J. Raney & Sons, Inc.

Edward G. Menzie of Nexsen, Pruet, Jacobs & Pollard, Columbia, S.C., for First Peoples Nat. Bank of S.C.

Hali J. Wells, Oklahoma City, Okl., for H. Clyde Davis, Dana A. Clasby, Citizens Nat. Bank and C. R. Anthony Estate.

R. L. Choate of McKay, Chandler & Choate, P.A., Magnolia, Ark., for Ima G. Peace.

John E. Gaughan, III, of Gaughan, Barnes, Roberts, Harrell & Laney, Camden; Ark., for Margaret C. Grayson.

Glen D. Huff and Michael D. Caldwell, Oklahoma City, Okl., for Charlotte Sizeland.

Gary F. Liles of Eichenbaum, Scott, Miller, Crockett & Darr, Little Rock, Ark., for Martha L. Allen.

John M. Sharp, Tulsa, Okl., for Oklahoma Natural Gas Co.

Roderic A. Johnson of R. K. Johnson & Co., Inc., St. Petersburg, Fla., for R. K. Johnson & Co.

Raymond E. Theimer and H. J. Mesigh, Oklahoma City, Okl., for Rimrock Gas Co.

Jack L. Kinzie, Oklahoma City, Okl., for Linda Thomson Law Firm.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

EUBANKS, District Judge.

### INTRODUCTION

On April 14, 1976, Fort Cobb, Oklahoma, Irrigation Fuel Authority ("Authority") filed a petition under Chapter IX of the National Bankruptcy Act (11 U.S.C. § 401, et seq.), requesting relief pursuant thereto. On August 24, 1976, the Authority filed an amended petition.

On December 14, 1978, T. J. Raney & Sons, Inc. ("Raney"), a holder of 1969 Series A bonds and 1973 Series C bonds and the proposed class representative of the civil action styled, *T. J. Raney & Sons, Inc. v. Fort Cobb, Oklahoma, Irrigation Fuel Authority, et al.,* No. 76–0554–T (W.D.Okl.), filed the presently pending motion to dismiss the Chapter IX petition and amended petition of the Authority. Raney asserted the following grounds for dismissal:

(a) The Authority is not a validly created Oklahoma Public Trust (60 O.S.1951, as amended 1953, 1963 and 1970, §§ 176–180);

(b) If the Authority is not a validly created Oklahoma Public Trust, it is not authorized to file a petition under Chapter IX (11 U.S.C. § 404);

(c) The Authority is not the type of "State's political subdivision or public agency or instrumentality" which is contemplated by § 84 of the Act (11 U.S.C. § 404) as eligible for relief; and

(d) This case has failed to proceed for want of prosecution under Section 98 of Chapter IX (11 U.S.C. § 418).

At the time of the filing of this motion, Raney indicated that if the court grants the motion to dismiss, Raney intends to file a petition for this case to proceed under Chapter X of the Bankruptcy Act (11 U.S.C. § 501, et seq.).

The court entered an order on December 18, 1978, setting a hearing on this motion on January 25, 1979. The order was addressed to all creditors and other parties in interest and directed such parties that if they wished to support or to oppose the motion to dismiss, they should file a written response with the Clerk of the Court on or before January 25, 1979, or in the alternative, attend the hearing and state the position.

The court heard arguments on this motion on January 25, 1979. At that time, the court also noted that several bondholders

had responded to the December 18, 1978, order by indicating their positions on the motion to dismiss. The court ordered that these responses be made a part of the record of the hearing. The court informed the parties that the Securities and Exchange Commission had requested leave to file a brief in support of Raney's motion to dismiss, which was to be filed on January 29, 1979. The court ordered the parties to file any response to the Securities and Exchange Commission's brief along with proposed findings of fact and conclusions of law by February 8, 1979.

This matter now being ripe for determination, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The "organizational meeting" of the Fort Cobb, Oklahoma, Irrigation Fuel Authority was held on April 29, 1969, but the place of such meeting is not known by this court.

2. At the April 29, 1969, meeting, Russell L. Henry, C. Lynn Marchant, and Calvin Anderson, as both Trustors and Trustees, entered into a Declaration of Trust.

3. The executions by Russell L. Henry, C. Lynn Marchant, and Calvin Anderson were notarized on June 27, 1969, in Jackson County, Missouri.

4. The Declaration of Trust specifically states that the beneficiary of the Trust shall be the Town of Eakly, Oklahoma, and that the residue of the trust estate shall belong to the beneficiary.

5. The Declaration of Trust contemplated that the Authority would provide natural gas service to any and all users throughout Washita and Caddo Counties, Oklahoma.

6. Under the Declaration of Trust, the beneficiary of the Authority does not have any right to control or direct any act of the Trustees. The Trustees have full, complete and independent power and authority to establish and control charges and rates for natural gas distribution services.

7. A document entitled "Beneficiary's Certificate of Acceptance," dated April 30, 1969, bearing the signature of only one member of the Town of Eakly's Board of Trustees, Gerald Kennedy, President of the Board of Trustees of the Town of Eakly, Oklahoma, and bearing a page number "–11–," has been attached to the Declaration of Trust.

8. Ordinance 107 of the Town of Eakly, Oklahoma, dated April 30, 1969, is purportedly an acceptance of the Trust by the Board of Trustees of the Town of Eakly. The minutes of that meeting fail to show, however, that any members of the Board of Trustees other than Gerald Kennedy, President of the Board, were present at the meeting. Gerald Kennedy alone signed the ordinance and the purported acceptance of the Trust on behalf of the Town of Eakly. The ordinance was not published until May 1, 1969.

9. The Trustees of the Authority have executed four amendments to the Declaration of Trust. The first amendment to the Declaration of Trust was executed on or before July 31, 1969, prior to the issuance of the Series 1969 bonds. The amendment established a general service area within Washita and Caddo Counties.

10. The principal feature of the second and third amendments was to enlarge the service area of the Authority from Washita and Caddo Counties to a larger area encompassing Harmon, Beckham, and Greer Counties.

11. The fourth amendment to the Declaration of Trust gave the formerly *ex officio* Trustees of the Authority full Trustee status.

12. Subsequent to the fourth amendment to the Declaration of Trust, on March 25, 1976, the Town of Eakly Board of Trustees executed a purported re-acceptance of beneficial interest in the Trust. This re-acceptance occurred less than three weeks before the Chapter IX bankruptcy action was filed.

13. None of the governing bodies of Washita, Caddo, Harmon, Beckham, or Greer

Counties has accepted beneficial interest in the Trust nor in any amendment thereto.

14. The State of Oklahoma has not accepted beneficial interest in the Trust nor in any amendment thereto.

15. Although by the express terms of the Declaration of Trust the Authority was designed to benefit Washita and Caddo Counties as well as the State of Oklahoma, the Declaration of Trust named the Town of Eakly, Oklahoma, as the sole beneficiary whose acceptance was necessary in order to establish the Trust.

16. The Town of Eakly, Oklahoma, is a small town within Caddo County. Substantially all of the gas system facilities and customers of the Authority are located throughout Caddo and Washita Counties and are not within or near the corporate limits of Eakly.

17. The Authority financed the acquisition and/or construction of the gas distribution system through the public offering of three series of revenue bonds in 1969, 1971 and 1973. The proceeds from the third offering, amounting to approximately one-third of the total capitalization of the Authority is unaccounted for.

18. On April 14, 1976, the Authority filed with its petition a document entitled "Plan," which proposed a method to adjust its debts. On August 24, 1976, the Authority filed with its amended petition a document entitled "Amended Plan." Neither the plan nor the amended plan were presented for confirmation by this Court. In April 1977, the Authority submitted, but did not file, a document entitled "Second Amended Plan," which has been objected to by Raney and other parties in interest. This Court takes judicial notice of the filing by the Authority of a document entitled "Second Amended Plan," on March 15, 1979, approximately five weeks after the motion by Raney to dismiss this Chapter IX proceeding was taken under advisement by this Court. Notwithstanding this occurrence, the first meeting of creditors was commenced on October 19, 1976, but has made little, if any, progress. The second amended plan has not been circulated for approval by creditors. Likewise, the second amended plan has not been presented for hearing on confirmation by this Court nor has it been set for hearing. During the pendency of this proceeding, bondholders have not received any interest payments. Nor have bondholders been repaid any principal. Moreover, during this period, the Authority has not generated enough revenues from its operations to pay the interest or to repay the principal on the bonded indebtedness according to its stated terms. However, the Authority and its customers enjoy the use of the gas distribution system, whose acquisition and/or construction was financed by the bondholders.

19. On July 9, 1976, Raney filed a class action lawsuit against the Authority and others alleging violations, *inter alia,* of the Securities Act of 1933 and the Securities Exchange Act of 1934, in connection with the sale of 1973 Series C revenue bonds of the Authority.

20. Since the formation of the Authority, its governing body, likewise known as the Board of Trustees, is composed of representatives of various customers of the Authority and not the bondholders, who financed the acquisition and construction of the Authority's gas distribution system.

21. In the Report of Consultant to the United States District Court for the Western District of Oklahoma, filed May 16, 1977, a disinterested and independent court-appointed official challenged the propriety of the Authority's retail gas rate structure. The consultant recommended that the rate structure be based on alternative sources of energy. The Authority has not adopted this recommendation, nor has it offered any evidence at any subsequent court hearing in this proceeding why this recommendation was not adopted.

22. From April 14, 1976, to May 10, 1978, the Authority contested the contractual validity of the 1973 Series C revenue bonds, totalling approximately $1,500,000. The Authority's auditors have issued an opinion that the financial statements of the Authority do not present fairly its financial

condition for fiscal years 1975, 1976 and 1977, in light of the Authority's failure to record the 1973 Series C revenue bonds as a liability. On May 11, 1978, the Authority's counsel stated in open court that the Authority will hereinafter recognize the contractual validity of the 1973 Series C revenue bonds, and the Authority adopted a resolution on that same day, which it filed with this Court on May 17, 1978. This Court takes judicial notice that, on March 1, 1979, the Authority filed with this Court the auditors' report on its financial statements for the fiscal year 1978. Neither the auditors' report nor the accompanying financial statements acknowledge the Authority's recognition of the contractual validity of the 1973 Series C revenue bonds.

## CONCLUSIONS OF LAW

1. The Public Trust Act requires that before a trust can become effective, the Declaration of Trust must be accepted by the beneficiary or beneficiaries. 60 O.S. 1951, as amended 1953, 1963 and 1970, § 177.

2. Where a beneficiary is a county or municipality, the acceptance of a public trust must be done by the governing body of the county or municipality, and such acceptance must be endorsed on the Declaration of Trust before the public trust becomes effective. 60 O.S.1951, as amended 1953, 1963 and 1970, § 177.

3. The failure of the minutes of the April 30, 1969, meeting of the Board of Trustees of the Town of Eakly to list the members present makes impossible any presumption of validity of the ordinance. The court cannot presume that any actual meeting took place on April 30, 1969, since no members were listed as being present.

4. The action of the President of the Board of Trustees of the Town of Eakly in attempting to accept the beneficial interest of the Trust was not a proper acceptance as required by the Public Trust Act. The entire governing body of the municipality was required to accept the beneficial interest.

5. The Supreme Court of the State of Oklahoma has looked to the actions of the governing body of the beneficiary of a public trust shortly after its formation, and not years after its existence, to ascertain the validity of a public trust. *E. g., Woodward v. City of Anadarko,* 351 P.2d 292, 295 (Okl. 1960).

6. The purported last-minute "re-acceptance" by Eakly's Board of Trustees on March 25, 1976, approximately seven years after the alleged formation of the Trust, after all public debt had been issued, sold, and delivered, and as a predicate to this Chapter IX proceeding, is of no force or effect on the legal question of the validity of the Trust. A court in a bankruptcy proceeding, as a court of equity, should not recognize a last-minute attempt to cure fatal defect in the operative status of an entity seeking to commence a rehabilitative proceeding under Chapter IX of the Bankruptcy Act, which would permit the entity to enjoy a monopoly over the course of the proceeding, in light of its prior conduct and circumstance, namely: (1) the unaccountability of the proceeds from the most recent public offering of revenue bonds, totalling more than one-third of the total capitalization of the entity; (2) the misleading and inaccurate correspondence with bondholders between July 1975 and October 1975 concerning the reason for the failure to make interest payments on the revenue bonds; (3) a substantial challenge by a disinterested and independent court-appointed official to the entity's retail gas rate structure, which is determined by managers who are accountable to the entity's customers and not to the persons who financed the acquisition and construction of the entity's gas distribution system; and (4) substantially all of the claims to be adjusted in this attempted rehabilitation are held by widely scattered public investor creditors, who are least likely to organize in groups to protect their interests and who do not enjoy the protection of an indenture trustee.

7. The Public Trust Act requires that a public trust can only be utilized by a

beneficiary in furtherance of an authorized or proper function of said beneficiary. Therefore, since the Authority contends that the Town of Eakly is the sole beneficiary of the Declaration of Trust, Eakly must have an authorized or proper function in providing gas distribution services to customers throughout the gas distribution system in Washita and Caddo Counties.

8. An "authorized or proper function of the beneficiary" is a term which has been construed to include any function which the beneficiary municipality could be authorized to perform by the legislature. *Board of County Commissioners of Oklahoma County v. Warram*, 285 P.2d 1034 (Okl.1955). Although the court is cognizant of cases and opinions of the Oklahoma Attorney General which state that a municipal trust can perform an authorized or proper function while performing acts outside the corporate limits of the municipality and even within the corporate limits of another municipality, the court finds those cases and opinions distinguishable from the present case. For example, the Authority cites the case in which the Oklahoma Supreme Court upheld the Oklahoma City Municipal Improvement Authority's action in going over 100 miles to construct a pipeline from Atoka Reservoir to Oklahoma City. *Harrison v. Barton*, 358 P.2d 211 (Okl.1960). The Oklahoma City Municipal Improvement Authority was, however, performing a function for the benefit of the residents of Oklahoma City in constructing the pipeline. It was not proposing to furnish water to all persons along the course of the pipeline.

9. Accepting beneficial interest in a Declaration of Trust which contemplated providing natural gas service to persons throughout at least two counties was not an authorized or proper function of the Town of Eakly. Thus, even if the Town of Eakly had properly accepted beneficial interest in the Declaration of Trust, the Authority was not a valid public trust in that the acceptance did not constitute an authorized or proper function of the beneficiary.

10. The Fort Cobb, Oklahoma, Irrigation Fuel Authority is thus not a valid public trust because it failed to substantially comply with the Oklahoma Public Trust Act (60 O.S.1951, as amended 1953, 1963 and 1970, §§ 176–180).

11. Section 98(a) of Chapter IX of the Bankruptcy Act, 11 U.S.C. § 418(a), provides for permissive dismissal of a Chapter IX proceeding after hearing on notice. The legislative history of Chapter IX disclosed that the list of five reasons for permissive dismissal, as enumerated in section 98(a), is nonexclusive. The court may dismiss the proceeding for other reasons. The court's power to dismiss the proceeding is defined by the inherent power of a court of equity. 2 U.S.Code Cong. & Admin.News, pp. 539, 574 (1976).

12. Since the Authority is not a valid public trust under the Oklahoma Public Trust Act, the Authority is not eligible to proceed under Chapter IX of the Bankruptcy Act.

In accordance with the foregoing findings and conclusions,

IT IS ORDERED that the motion to dismiss filed by T. J. Raney & Sons, Inc. is hereby granted and the Chapter IX bankruptcy petition of Fort Cobb, Oklahoma, Irrigation Fuel Authority and the cause therein stated is hereby dismissed.